# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Ohio Security Insurance Company, et al.,

      Plaintiffs

v.

Hi-Tech Aggregate, LLC, et al.

      Defendants

Case No.: 2:23-cv-01094-JAD-NJK

**Order Granting in Part and Denying in Part Motion for Summary Judgment, Granting in Part and Denying in Part Motion to Dismiss, and Denying Motions to Reopen Briefing**

[ECF Nos. 14, 44, 64, 65]

      Ohio Security Insurance Company and Ohio Casualty Insurance Company (collectively, "Ohio") bring this action against their insured, Hi-Tech Aggregate, LLC, and Pavestone, LLC, seeking a declaration that Ohio has no insurance-coverage obligations for the monetary judgments that Pavestone received against Hi-Tech in Nevada state court. Ohio moves for early summary judgment, arguing that three policy exclusions in Hi-Tech's Ohio-issued policies preclude coverage for damages and that Pavestone's state-court attorney's fees award isn't covered at all. According to Ohio, nothing beyond the policies and the underlying state-court judgment is necessary to resolve these coverage questions. Ohio separately moves to dismiss Hi-Tech's counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and violations of unfair-claim-practices statutes under Federal Rule of Civil Procedure (FRCP)12(b)(6).

      Hi-Tech and Pavestone oppose both motions.[1] They argue that Ohio is misinterpreting the at-issue exclusions and other policy provisions and that further discovery is needed to resolve

---

[1] Pavestone responded to Ohio's motion to dismiss but only opposed its choice-of-law arguments.

coverage questions, so it would be premature to enter judgment on these issues now.   As to the 12(b)(6) motion, Hi-Tech contends that it has sufficiently alleged its counterclaims against Ohio, and even if it hasn't, it should be given leave to amend to do so.

Ohio hasn't demonstrated that it is entitled to a no-coverage judgment as to any of the three exclusions it raises, so I deny its motion as to those three exclusions.  While it has shown that the CGL policy doesn't cover Pavestone's attorney's fees award, I find that the umbrella policy is ambiguous on this issue and thus construe it in favor of coverage.  Hi-Tech hasn't sufficiently alleged its bad-faith or unfair-claim-practices counterclaims, though, so I dismiss them.  But I do so with leave to amend because I don't find that amendment would be futile.

## Background

### I.   Hi-Tech, Pavestone, and the insurance policies

Hi-Tech's principal place of business is in Mesquite, Nevada,[2] where it mines and extracts "aggregate," a type of sand.[3]   One of Hi-Tech's customers was Pavestone, a company that manufactures pavers.[4]   Pavers, which are akin to bricks but can be made with other materials like concrete, are laid down to create hardscape like walkways or driveways.  Throughout all periods relevant to this case, Hi-Tech was listed as an additional named insured on two Ohio-issued policies—a commercial general liability (CGL) policy and an umbrella policy.[5]   The

---

[2] ECF No. 14-7 at 3 (state-court judgment, findings of fact).

[3] *Id.*

[4] *Id.* at 2.

[5] ECF Nos. 14-3, 14-4, 14-5, 14-6.  I cite to the 2019–2020 versions of the CGL and umbrella policies throughout rather than 2018–2019 versions.  *See* ECF Nos. 14-4, 14-6.  There are no material differences between them that are relevant to deciding these motions.

primary named insured on both policies is Rees's Enterprise, which is based out of Coalville, Utah.[6]

## II.    Hi-Tech's defective aggregate caused problems with Pavestone's pavers, which led to state-court litigation.

In early 2019, Pavestone began purchasing large quantities of Hi-Tech's aggregate to use in its Las Vegas operation,[7] where it manufactures pavers for use in residential and commercial sidewalks and driveways.[8]  According to the state-court judgment at issue, by late 2019 Pavestone began getting complaints from its customers about efflorescence problems with installed pavers.[9]  Efflorescence is caused by sodium carbonate and "is a condition in which salts form on the surface of the pavers when the pavers are exposed to water."[10]  The efflorescence that occurred on the pavers "manifested itself as an unsightly crust, at times up to 1/8 inch on the surface of the pavers."[11]  And it did so "after the pavers had been installed and used to construct improvements to real property, specifically sidewalks and driveways."[12]

Pavestone investigated the cause of the efflorescence problem and ultimately determined that Hi-Tech's aggregate (in particular, the high sodium concentration of that aggregate) was the culprit.[13]  Pavestone incurred significant losses associated with replacing its clients' installed

---

[6] ECF No. 14-4 at 4.

[7] ECF No. 14-7 at 4–6 (the parties stipulated that Pavestone started purchasing "over 9,000 tons of aggregate per month" in February 2019).

[8] *Id.* at 2–3.

[9] *Id.* at 6.

[10] *Id.* at 4.

[11] *Id.* at 6.

[12] *Id.*

[13] *Id.* at 6–7.

pavers, its inability to use any pavers manufactured using Hi-Tech's aggregate, and excess aggregate that Pavestone had purchased but not yet incorporated into pavers.  So Pavestone sued Hi-Tech in Nevada state court, bringing a claim for breach of the implied warranty of fitness for a particular purpose, among others.[14]  A bench trial was held and the court ruled in Pavestone's favor,[15] finding that Hi-Tech had breached that implied warranty because "the aggregate during the relevant period was not fit for the particular purpose" of manufacturing pavers.[16]  The state court awarded Pavestone $2,144,357.84 in damages,"[17] an amount Hi-Tech and Pavestone stipulated to, plus $322,509.46 in prejudgment interest; $11,632.83 in costs; $114,915.57 in "Attorney's Fees, Expenses, and Costs"; and $2,456.24 in prejudgment interest on the attorney's fees, expenses, and costs, for a total judgment of $2,603,415.70.[18]

## III.    Ohio sues in federal court for declaratory relief.

Ohio defended Hi-Tech in the state-court litigation under a reservation of rights[19] and sent several reservation-of-rights letters to Hi-Tech throughout the pendency of that case.[20]  In those letters, Ohio indicated that it believed several exclusions might apply to preclude coverage.[21]  After the bench trial concluded and the state-court judgment was entered, Ohio filed this case, seeking "a declaration that it has no coverage obligations" for the damages and

---

[14] *See generally id.*

[15] *Id.* at 20.

[16] *Id.*

[17] *Id.* at 21.

[18] ECF No. 14-8 at 3–4.

[19] ECF No. 1 at ¶¶ 17, 23; *see also* ECF Nos. 32-3, 32-4.

[20] ECF Nos. 32-3, 32-4.

[21] *Id.*

attorney's fees awarded against Hi-Tech in the state-court litigation.[22]  It relies on two exclusions in both the CGL and umbrella policies (a "damage to your work" exclusion and a "sistership" exclusion), one exclusion in the umbrella policy (a "manufacturer's errors or omissions" exclusion), and an attorney's fees disclaimer in the CGL policy.[23]

Ohio moves for early summary judgment, arguing that discovery isn't necessary because the policies and the state-court awards are all that the court needs to reach a no-coverage ruling. It also moves to dismiss Hi-Tech's breach-of-contract, bad-faith, and statutory unfair-claim-practices claims under FRCP 12(b)(6), contending that they should be dismissed with prejudice and without leave to amend.  And Hi-Tech recently moved to reopen the briefing on both motions, arguing that facts gleaned in discovery only further demonstrate that both motions should be resolved in its favor.

**Analysis**

## I.    Choice-of-law principles require this court to apply Utah law to the contract claims and Nevada law to the tort and statutory claims.

Across their summary-judgment and motion-to-dismiss briefing, the parties argue about whether Utah or Nevada law controls.[24]  Ohio contends that Utah law applies because it's the state with the most substantial relationship to the policies.[25]  Hi-Tech and Pavestone take the position that Nevada law applies because Hi-Tech is a Nevada entity and the principal question

---

[22] ECF No. 1 at ¶¶ 1, 4.

[23] Ohio concedes that it is responsible for covering the $11,632.83 awarded as costs.  ECF No. 14 at 13.

[24] Only Ohio directly (though briefly) addresses what relevant conflicts there are between Utah and Nevada law when it comes to interpreting insurance policies.  ECF No. 14 at 16.  And it contends that there aren't any, which seems to be true—at least as to the general principles that are relevant here.  *See Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

[25] ECF No. 38 at 3–4.

here is whether its insurance policies cover awards rendered against Pavestone in state-court litigation in Nevada about a series of events that took place in Nevada.[26]  Because the choice-of-law determination impacts both of the pending dispositive motions, I address it first.

### A.   Utah law governs the parties' contract claims.

"It is well-established that in diversity cases, such as this one, 'federal courts must apply the choice-of-law rules of the forum state.'"[27]  "Nevada tends to follow the Restatement (Second) of Conflict of Laws (1971) in determining choice-of-law questions involving contracts, generally, and insurance contracts, in particular."[28]  Two sections of the Restatement are relevant here, both of which Nevada courts use.  The first, § 193, pertains exclusively to insurance contracts and provides that, when there is a "principal location of insured risk" under the policy, the law of that location will generally govern.  The second, § 188, applies to contracts generally and describes a number of factors for courts to consider in determining which state has the most substantial relationship with the at-issue contract.  While it appears under § 193's principal-location test that Utah law governs the parties' contract claims, an application of § 188's substantial-relationship test leaves no doubt.

### 1.   *If there is a principal location of the risk under the policies, it is Utah.*

Restatement (Second) of Conflict of Laws § 193 (1971) establishes that the validity of an insurance contract "and the rights created thereby are determined by the local law of the state which the parties understood was to be principal location of insured risk during the term of the

---

[26] *Id.*; ECF No. 44 at 16–17; ECF No. 47 at 5–7.

[27] *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021) (cleaned up) (quoting *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987)).

[28] *EB Holdings II, Inc. v. Ill. Nat'l Ins. Co.*, 108 F.4th 1211, 1219 (9th Cir. 2024) (cleaned up) (quoting *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014)).

policy." Hi-Tech argues that application of this section establishes that Nevada law should apply to interpreting the CGL and umbrella policies because "the principal location of Hi-Tech Aggregate, LLC, is Mesquite, Nevada,"[29] and that "facility is the 'insured risk' for the purposes of this case."[30] Pavestone likewise contends that § 193 applies and directs a finding that Nevada law controls.[31] Ohio counters that the principal location of the insured risk is Utah because "[t]he policies . . . were issued by Ohio to principal named insured Rees's Enterprises, at its address in Coalville, Utah."[32] While the policies "also include Hi-Tech as an additional named insured," its Mesquite, Nevada operation is merely an "additional location," Ohio argues, "not the principal location."[33]

Hi-Tech's principal place of business in Mesquite is certainly *an* insured location under the policies given that they list Hi-Tech as an additional insured, but it isn't *the principal location of the insured risk under the policies.* If there is such a location,[34] it is in Utah. The primary named insured under the policies is a Utah entity, and the only locations the policies

---

[29] ECF No. 33 at 6.

[30] ECF No. 46 at 8.

[31] ECF No. 45 at 2–3.

[32] ECF No. 47 at 6.

[33] *Id.* at 6–7.

[34] Restatement (Second) of Conflict of Laws § 193 cmt. b (1971) (noting that location of the risk, while normally attributed "greater weight than any other single contact in determining the state of the applicable law," has "less significance" when "the policy covers a group of risks that are scattered throughout two or more states").

specifically describe are in Coalville, Utah.[35]  The policies also contain a number of Utah-specific endorsements but no Nevada-specific ones.[36]

Hi-Tech and Pavestone seem to believe that the location of the insured risk that is at issue in this particular case is what should control,[37] but the plain language of § 193 is inconsistent with that interpretation.  It directs courts to look to the "local law of the state *which the parties understood was* to be the principal location of the insured risk *during the term of the policy*."[38] This language and use of the past tense demonstrate that the entire at-issue policy should be examined to ascertain the parties' expectations at the time of contracting.[39]  And viewed through

---

[35] ECF No. 14-4 at 4 (noting that Rees's Enterprise is the primary "named insured" and, under a section summarizing the locations to which the policy applies, listing four separate locations that are all in Coalville, Utah); *see also* ECF No. 14-6 at 4.

[36] ECF No. 14-4 at 96–97, 159–161, 211; ECF No. 14-6 at 50, 71.

[37] *See* ECF No. 46 at 8 ("Hi-Tech is the facility [that] manufactures the aggregate [that] was involved in the underlying Pavestone case.  The Hi-Tech facility is the 'insured risk' for the purposes of this case.").

[38] Restatement (Second) of Conflict of Laws § 193 (1971) (emphasis added).

[39] Hi-Tech also highlights § 193's comment f, arguing that it too directs a finding that Nevada law applies here.  ECF No. 46 at 8.  When paraphrasing comment f, Hi-Tech conveniently omits key language, but that language makes it clear that the comment applies to a specific scenario that involves the use of certain forms.  *See Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 301, 309 (E.D. Pa. 2012) (finding that comment f didn't apply because policy didn't contain "special statutory forms"); *accord, Ameron Int'l Corp. v. Am. Home Assur. Co.*, 2011 WL 2261195, at *8 (C.D. Cal. June 6, 2011); *Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp. 2d 909, 922 (N.D. Cal. 2010); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1206 (S.D. Cal. 2007).  There aren't any such forms in either policy here—from Nevada or elsewhere, *see* ECF Nos. 14-4, 14-6, so comment f doesn't apply.  This conclusion is buttressed by comment b's language that the location of the insured risk has "less significance" when a policy covers risks scattered across two or more states; if comment f pertained to all policies that insured risks in multiple states, then that guidance from comment b wouldn't ever apply.  Restatement (Second) of Conflict of Laws § 193 cmt. b (1971).  So to the extent that comment f suggests that the court could elect to treat these policies as a collection of separate, single-risk policies, I decline to do so.

1    this lens, it is apparent at least that Nevada isn't the principal location of the insured risk under

2    the policies.

3                    **2.    *Under the substantial-relationship test, Utah law controls.***

4    When "an insurance policy does not evince a clear choice of law governing a particular

5    issue, the Nevada Supreme Court has instructed courts to apply § 188 of the Restatement, i.e.,

6    the 'substantial relationship' test."[40]  Courts applying this test must consider the following five

7    factors to determine "whether a state possesses a substantial relationship with a contract: (a) the

8    place of contracting; (b) the place of negotiation of the contract; (c) the place of performance;

9    (d) the location of the subject matter of the contract; and (e) the domicil[e], residence,

10   nationality, place of incorporation[,] and place of business of the parties."[41]  Courts should

11   evaluate each factor "'according to [its] relative importance with respect to the particular issue'

12   that gave rise to the choice-of-law dispute in the first place."[42]

13   Hi-Tech concedes that the first two factors favor Utah because the policies were

14   negotiated and entered into in Utah, but it argues that the final three factors tip the scale in favor

15   of Nevada.[43]  It argues that the performance factor favors Nevada because Hi-Tech conducts its

16   business in Nevada, Pavestone's purchase of Hi-Tech's aggregate was from its Mesquite facility,

17   and any claim against the insurance policy would have been made from that facility.[44]  The

18

---

19   [40] *EB Holdings II,* 108 F.4th at 1219–20 (citing *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 789–90 (Nev. 1990)).

20   [41] *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1253–54 (Nev. 1998)
21   (citing *Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993) (cleaned up); *see also EB Holdings II*, 108 F.4th at 1220 (quoting Restatement (Second) of Conflicts § 188 (1971)).

22   [42] *EB Holdings II*, 108 F.4th at 1220 (cleaned up) (quoting *Sotirakis*, 787 P.2d at 789–90).

23   [43] ECF No. 46 at 7.

     [44] *Id.*

place-of-business factor might be "neutral or slightly more favorable to Nevada," Hi-Tech

argues, because the company is incorporated in Nevada, and Ohio isn't incorporated in Utah.[45]

And the location of the risk (or subject matter of the contract) favors Nevada, according to Hi-

Tech, because its facility is the one that "manufactures the aggregate [that] was involved in the

underlying Pavestone case" for which it seeks coverage.[46]   In sum, Hi-Tech sees Nevada law as

the clear winner because of the state's connection to the contractual dispute.

But analysis under § 188 examines a state's relationship to the contract itself, not to the

particular contractual dispute at issue.[47]   And with that perspective, the final three factors are all

neutral.  The policies insure separate businesses that operate in Utah and Nevada, center on

coverage for these Utah- and Nevada-based businesses, and require coverage (i.e., performance)

in both states should the need arise.[48]   With the first two factors favoring Utah, and the other

three being neutral, the scale tips back in favor of Utah.  So Utah law governs interpretation of

these policies.

---

[45] *Id.* at 7–8.

[46] *Id.* at 8.

[47] *See Consol. Generator-Nevada, Inc.*, 971 P.2d at 1253–54 (citing *Williams*, 849 P.2d at 266) (stating that Nevada courts use the § 188 factors to determine "whether a state possesses a substantial relationship with a contract").

[48] The "performance" factor might be attributed the most weight because of its relevance to the issue that is in dispute here—whether the policies cover losses stemming from Hi-Tech's defective aggregate.  *See* Restatement (Second) of Conflict of Laws § 188 (1971) ("These contacts are to be evaluated according to their relative importance with respect to the particular issue.").  *But see id.* at § 193 cmt. b (noting that the location of the risk has "less significance" when "the policy covers a group of risks that are scattered throughout two or more states").  But this point isn't ultimately significant here because the factor doesn't favor either state.

**B.** **Nevada law applies to Hi-Tech's bad-faith and statutory unfair-claim-settlement-practices claims.**

While Utah law applies to the contractual claims in this case, "[i]t is well established in the federal courts that a conflict-of-laws analysis may result in the laws of different jurisdictions applying to different issues in the same case."[49]  Hi-Tech's counterclaims for breach of the covenant of good faith and fair dealing and unfair claim settlement practices sound in tort, not contract.[50]  And Nevada courts use a different test to analyze choice-of-law questions for such claims: the most-significant-relationship test.

The state with the most significant relationship is determined by looking to (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil[e], residence, nationality, place of incorporation[,] and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered."[51]  Under this test, the factors all weigh in favor of applying Nevada law to Hi-Tech's bad-faith and statutory claims.  The purported injury and the conduct causing it—Ohio's handling of Hi-Tech's claim for coverage—occurred in Nevada and focused on coverage for awards stemming from

---

[49] *EB Holdings II*, 108 F.4th at 1219 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307 (1981).  *See also Sivil v. Country Mut. Ins. Co.*, 619 F. Supp. 3d 1072, 1076–77 (D. Nev. 2022) (analyzing this question and holding that the Nevada Supreme Court would find that courts should determine which state's law applies on an issue-by-issue or claim-by-claim basis rather than making a blanket decision to cover all claims).

[50] *See* ECF No. 41 at 12–13; *see, e.g., Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (violation of the covenant of good faith and fair dealing in the insurance context "gives rise to a bad-faith tort claim"); *Savage v. Educators Ins. Co.*, 908 P.2d 862, 866 (Utah 1995) (breach of the covenant of good faith sounds in tort when the contract provides coverage for third-party claims because such a contract creates a fiduciary relationship between the insurer and insured); *Sivil*, 619 F. Supp. 3d at 1078 (noting that insurance-bad-faith and unfair-claim-practices claims sound in tort).

[51] Restatement (Second) of Conflict of Laws § 145 (1971); *see also Gen. Motors Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006).

1  litigation in Nevada state court.  Hi-Tech's place of business is in Nevada, and Ohio's is not in

2  Utah.  And the parties' relationship is centered on Ohio's insuring of Hi-Tech's Mesquite

3  facility, which of course is in Nevada.  So Nevada law applies to Hi-Tech's bad-faith and unfair-

4  claim-practices counterclaims.

5  **II.    Ohio's Motion for Summary Judgment**

6        Ohio seeks summary judgment in its favor on its declaratory relief claims based on three

7  policy exclusions: the "damage to your work" exclusion, the "sistership" exclusion, and the

8  "manufacturer's errors or omissions" exclusion.  It also seeks summary judgment on its claim

9  that it has no obligation to cover Pavestone's attorney's fees award because the policies don't

10  provide such coverage.  When the plaintiff bears the burden of proof on a claim at trial, as Ohio

11  does for these declaratory relief claims, "it must come forward with evidence [that] would entitle

12  it to a directed verdict if the evidence went uncontroverted at trial."[52]  It must establish "beyond

13  controversy every essential element of its" claim in order to avoid trial and prevail on summary

14  judgment.[53]

15

16
     **A.    Insurance exclusions must be interpreted according to their usually accepted meaning, and it's the insurer's burden to show they apply.**

17        In Utah, "insurance policies are generally interpreted according to rules of contract

18  interpretation,"[54] and their words are read "according to their usually accepted meanings and in

19

20

---

21  [52] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)
(quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations

22  omitted)).

[53] *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

23  [54] *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999) (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)).

light of the insurance policy as a whole."[55]  An insurer who seeks to exclude particular losses from coverage must do so "by using language that clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."[56] And it is the insurer's burden to demonstrate that an exclusion applies.[57]

"A contract is ambiguous if it is unclear, omits terms, has multiple meanings, or is not plain to a person of ordinary intelligence and understanding."[58]  Any "[a]mbiguities are construed against the drafter—the insurance company—and in favor of coverage."[59]  But if the policy is unambiguous, a court must enforce it "and 'may not rewrite an insurance contract . . . if the language is clear.'"[60]

### B.   Ohio has not shown that the "damage to your work" exclusion bars coverage in this case.

Ohio argues that the "damage to your work" exclusion, found in both policies, establishes that there isn't coverage for the damages at issue here.  That exclusion provides that the policies won't cover:

---

[55] *Id.* (quoting *Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992)).

[56] *Id.* (quoting *Alf*, 850 P.2d at 1275) (cleaned up); *see also LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988) ("[E]xclusionary clauses are to be most strictly construed against the insurer . . . ." (quoting *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1983))).

[57] *See LDS Hosp.*, 765 P.2d at 859 (quoting *Browning v. Equitable Life Assurance Soc'y*, 80 P.2d 348, 350–51 (Utah 1938)).

[58] *Utah Farm*, 980 P.2d at 686–87 (citing *Alf*, 850 P.2d at 1274–75; *Nielsen*, 848 P.2d at 666); *see also U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993) (collecting cases) ("Because insurance policies are intended for sale to the public, the language of an insurance contract must be interpreted and construed as an ordinary purchaser of insurance would understand it.").

[59] *Utah Farm*, 980 P.2d at 687 (citing *Alf*, 850 P.2d at 1274; *Nielsen*, 848 P.2d at 666).

[60] *Id.* (quoting *Alf*, 850 P.2d at 1275).

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.[61]

The term "your work" is defined in the CGL and umbrella policies as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts[,] or equipment furnished in connection with such work or operations."[62]

Ohio contends that this definition is satisfied in two different ways: "Hi-Tech's work or operations in creating the aggregate" satisfies the first part, and the aggregate itself "meets the second part as 'materials . . . furnished in connection with such work or operations.'"[63]  Hi-Tech and Pavestone reject Ohio's application of this definition.  According to Hi-Tech, Ohio's interpretation is "overly broad and seeks to stretch the meaning of 'your work' to also encompass the functions included in the definition of 'your product.'"[64]  Hi-Tech essentially argues that all it did was sell a product to Pavestone—an act that shouldn't bring it within the policies' definition of "your work."[65]  And Pavestone likewise argues that "Hi-Tech did not complete any 'work' such as installing or manufacturing pavers" but rather "simply mined a raw material from which the [aggregate] was extracted[,] and [then] sold" the aggregate to Pavestone, which Pavestone incorporated into its pavers.[66]

---

[61] ECF No. 14-4 at 83; ECF No. 14-6 at 30.

[62] ECF No. 14-4 at 95; ECF No. 14-6 at 36.

[63] ECF No. 14 at 17.

[64] ECF No. 33 at 8.

[65] *Id.*

[66] ECF No. 32 at 13.

14

To be sure, Ohio's interpretation of "your work" is overly broad.  In particular, its contention that Hi-Tech's aggregate is a "material" that is furnished in connection with its aggregate mining and extraction operations is unpersuasive.  A person of ordinary intelligence and understanding wouldn't interpret these words to mean what Ohio is arguing they mean.  Hi-Tech's aggregate wasn't *furnished in connection with* some larger work that Hi-Tech was performing for Pavestone of which the aggregate was merely a part.  Rather, the aggregate was the sole and exclusive end product of Hi-Tech's "work," and Hi-Tech sold the aggregate (and nothing else) directly to Pavestone.  But even if both Hi-Tech's operations and the aggregate itself satisfy the definition of "your work," this exclusion still wouldn't apply because it doesn't exclude damage to others' property resulting from the defective work, as Hi-Tech's aggregate damaged Pavestone's here.[67]

### 1.    The *"damage to your work" exclusion only precludes coverage for repairing or replacing the insured's own defective work.*

A proper analysis of this issue must start with a breakdown of this exclusion and what it requires.  First, the insured must be seeking coverage for property damage to its own work.  That is apparent not only from the exclusion's title, but also from its plain language.  Second, the property damage must also "arise out of" the insured's work or some part of it.  Third, it must fall within the "products-completed operations hazard," which requires that the work be complete when the property damage occurs and that the damage occurs away from premises the insured owns or rents.[68]  So "where *all of the damage* that is being claimed is *damage to the*

---

[67] Nor would it make a difference as to the scope of the "sistership" exclusion's applicability, as will be demonstrated *infra* at pp. 19–24.

[68] ECF No. 14-4 at 94.

*work of the insured which is caused by the work of the insured*," this exclusion will apply.[69]  In short, this exclusion "only precludes coverage for liability for repairing or replacing the insured's own defective work; it does not exclude coverage for damage to other property resulting from the defective work."[70]

### 2.    *Hi-Tech is seeking coverage for damage to Pavestone's work—not its own.*

Even assuming that Hi-Tech's mining and extraction operations come within the meaning of "your work," it is clear that this exclusion isn't triggered for to those operations.  Hi-Tech isn't claiming coverage for damages to its operations themselves but rather for damage to Pavestone's products and work (the pavers and their installation)[71] and, potentially, for Pavestone's loss of use of any remaining aggregate that hadn't yet been incorporated into pavers.[72]  The aggregate itself wouldn't come within the exclusion for the same reason: the pavers aren't Hi-Tech's work, so damages to them aren't damages to Hi-Tech's work.[73]  If this

---

[69] 9A Couch on Insurance § 129:18 (3d ed. 2019) (emphasis added).

[70] *Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 226–27 (5th Cir. 2009); *see also Gemini Ins. Co. v. ConstRX Ltd.*, 360 F. Supp. 3d 1055, 1070 (D. Haw. 2018) ("The exclusion for 'Damage To Your Work' does not apply where the claims transcend those for property damage to 'your work' arising out of it or any part of it and included in the 'products completed operations hazard.'" (cleaned up)).

[71] Even Ohio seems to recognize that the state-court damages award is, at least in large part, for damages to Pavestone's property or work.  *See* ECF No. 14 at 17–18 ("*Pavestone's property*, its pavers have been physically injured due to Hi-Tech's aggregate and *Pavestone's clients' sidewalks and driveways sustained physical injury* and need replacement as well." (emphasis added)).

[72] For more on this possibility, *see infra* Section II.C.2.

[73] Even if some claimed damages are solely attributable to the aggregate itself (rather than to the pavers), the state-court judge determined that those damages (i.e., the sodium carbonate content that made the aggregate defective) occurred before the aggregate left Hi-Tech's facility, bringing it outside of the products-completed operations hazard.  *See* ECF No. 14-4 at 94 (limited to "'property damage' occurring away from premises you own or rent").

exclusion had been drafted with an "or" between "your work" and "arising out of it," the result might be different.  But it wasn't, and Ohio's attempts to expand the unambiguous meaning of this exclusion in this way are unpersuasive.[74]

Ohio primarily[75] relies on the District of Utah's decision in *H.E. Davis & Sons, Inc. v. North Pacific Insurance Co*[76] to illustrate why the "damage to your work" exclusion applies here.  In *H.E. Davis*, the insured was an excavation and paving company hired to perform "site preparation, fill, and compaction" for a building, though the building itself was ultimately constructed by another contractor, Gramoll Construction Company.[77]  Soon after H.E. Davis completed its site-preparation work, "it was discovered that the soils placed by [H.E. Davis] were not sufficiently compacted."[78]  H.E. Davis then, "at its own cost, removed the offending soils and replaced them with properly compacted material."[79]  As part of this process, concrete footers that Gramoll had poured had to be removed and then later replaced.  H.E. Davis filed a

---

[74] *See* ECF No. 38 at 5 (asserting that "Exclusion L 'damage to your work' precludes coverage for property damage to your (insured's) work or 'arising out of any part of it'" even though the "or" Ohio adds doesn't actually appear in the exclusion (emphasis removed)); *see also* ECF No. 14 at 19 (arguing that "[a]lthough the damage was to the pavers," i.e., Pavestone's product, "and ultimately properties on which the pavers were installed, the damage arose from and is deemed to be Hi-Tech's work").

[75] Ohio also cites to *Overson v. U. S. Fid. & Guar. Co.*, 587 P.2d 149, 150 (Utah 1978), for the proposition that this exclusion is deemed "clear and unambiguous."  ECF No. 14 at 19; *see also* ECF No. 37 at 5.  I don't disagree with this point but find only that this exclusion clearly doesn't apply here.  In fact, *Overson* only further demonstrates by comparison why this exclusion isn't applicable; in that case, the court found the exclusion applied because "[t]he damage in question was *property damage to work performed by the insured* (erecting and insulating a building) which *arose out of work done by the insured employees* (cutting and bolt removing louvres) and *materials supplied by the insured* (foam insulation)."  *Overson*, 587 P.2d at 150 (emphasis added).

[76] *H.E. Davis & Sons, Inc. v. N. Pac. Ins. Co.*, 248 F. Supp. 2d 1079 (D. Utah 2002).

[77] *Id.* at 1081.

[78] *Id.*

[79] *Id.*

claim with its insurer, North Pacific, which investigated and then denied coverage[80] based in part on the "damage to your work" exclusion.[81]

The court agreed with North Pacific. It noted that the insured H.E. Davis only sought coverage "costs to repair and replace its own work product, i.e., the soil pad."[82] Indeed, "there was neither physical injury to the property nor complete loss of use to the property" on which the soil was installed.[83] Though some concrete footings that had been poured by Gramoll "had to be removed in order to repair the soil compaction problem"[84]—and the court found that the costs of removing and replacing them so that that task could be completed fell within the exclusion[85]— "the footings themselves *were not damaged*."[86] So the "damage to your work" exclusion barred coverage.

*H.E. Davis* is materially distinguishable from this case because of the very different ways that the insureds' work impacted the products of others. All of the damages in *H.E. Davis* were for repairing the insured's own defective work.[87] In sharp contrast, and as even Ohio concedes, Hi-Tech's aggregate caused irreparable property damage to the work or product of Pavestone, and it is that injury that formed the basis, at least in large part, of the state-court award here.[88]

---

[80] *Id.*

[81] *Id.* at 1085.

[82] *Id.* Tellingly, the *H.E. Davis* court found that there wasn't property damage at all, and the exclusions were only an alternative means of finding that there wasn't coverage for H.E. Davis's losses. *Id.* at 1084–85.

[83] *Id.* at 1085.

[84] *Id.*

[85] *Id.* at 1086.

[86] *Id.* at 1085 (emphasis added).

[87] *Id.*

[88] *See infra* Section II.C.2.

So I find that *H.E. Davis* is inapposite, and I deny Ohio's request for a no-coverage judgment based on the "damage to your work" exclusion.

### C. The "sistership" exclusion doesn't apply to damages stemming from withdrawal and disposal of Pavestone's defective pavers because they aren't Hi-Tech's work or product.

The second exclusion that Ohio claims bars coverage relates to recalling defective work or products. That exclusion, which appears in both policies, excludes coverage for:

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
> (2) "Your work"; or
> (3) "Impaired property";
>
> If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.[89]

This exclusion is commonly referred to as the "sistership" exclusion, and it "excludes coverage for damages claimed based upon the withdrawal or recall *of the insured's products* from the market or from use because of any known or suspected defect or deficiency to the product."[90] Indeed, "[t]he product to look to . . . is that sold by [the insured]," which is Hi-Tech here.[91]

---

[89] ECF No. 14-4 at 86; ECF No. 14-6 at 30.

[90] 9A Couch on Insurance § 129:24 (3d ed. 2019) (emphasis added).

[91] *Keystone Filler & Mfg. Co. v. Am. Mining Ins. Co.*, 179 F. Supp. 2d 432, 439 (M.D. Pa. 2002) (quoting *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 136 (3d Cir. 1988)), *aff'd*, 55 F. App'x 600 (3d Cir. 2002).

### 1. Damages from the recall, withdrawal, or replacement of Pavestone's pavers don't come within the "sistership" exclusion.

Ohio contends that the "sistership" exclusion applies "in cases where the insured's work must be withdrawn after it is installed on another's property."[92]  That assertion isn't wrong, but that didn't happen here.  The damages for which Ohio is seeking to bar coverage aren't costs associated with removing Hi-Tech's aggregate from within Pavestone's pavers (probably because that is impossible and never occurred).  Rather, the damages are the cost of removing the pavers themselves from Pavestone's customers' properties or from the market entirely.[93]  Those pavers aren't Hi-Tech's work or product as those terms are used within the policies—they're Pavestone's.[94]

Ohio argues that the application of this "sistership" exclusion isn't limited to situations in which the insured's product or work is recalled, it also "pertains to the parts of a whole where those parts impair the use of the whole."[95]  "Hi-Tech's [aggregate] is the 'part,'" Ohio explains,

---

[92] ECF No. 14 at 19.

[93] *See, e.g.*, ECF No. 14-7 at 20 (wherein the state court found that Hi-Tech's aggregate "caused damages to property other than" the aggregate itself).

[94]  Ohio even describes the pavers as Pavestone's property.  *See* ECF No. 14 at 17.  I note that Ohio repeatedly highlights that the "your work" and "your product" definitions also include warranties associated with said work or products, so that any warranties are also considered "your work" or "your product."  *See, e.g.*, ECF No. 14-4 at 95.  But this doesn't change my analysis as to any of the exclusions at issue here.  Directly reading these parts of the "your work" and "your product" definitions into the at-issue exclusions doesn't make sense (no warranties were themselves damaged or recalled) so their relevance here is unclear at best.  And to the extent that Ohio is arguing that these exclusions establish that *any* damages awarded as part of breach-of-warranty claims in an underlying action aren't covered because of the warranty language in these definitions—even when they are for irreparable damage done to a third party's property—neither the language in the policies nor any cases Ohio provides supports such a proposition.

[95] ECF No. 37 at 6.

1 "and Pavestone's pavers are the unusable whole."[96]  This general proposition would be true if the

2 "impaired property" prong of this exclusion applied here, but it doesn't.[97]

3        "Impaired property," as that term is defined in the policies, "means tangible property,

4 other than 'your product' or 'your work' that cannot be used or is less useful" so long as it

5 "[i]ncorporates 'your product' or 'your work' that is known or thought to be defective, deficient,

6 inadequate, or dangerous."[98]  As Ohio concedes, the pavers don't fall within that definition

7 because the impaired property needs to be capable of being "restored to use," and the pavers

8 were not.[99]  So, to hold that the paver-related damages fall within this exclusion would require

9 finding that, because the aggregate was incorporated into the pavers that were recalled, the

10 aggregate too was "recalled" under either the "your work" or "your product" prong.

11        But this would effectively render meaningless the "impaired property" prong in this

12 exclusion, along with that term's specific exemption for property that can't be "restored to use."

13 Also, neither of the nonbinding cases that Ohio cites for this proposition supports such a

14 reading.[100]  In *Big-D Construction Midwest, LLC v. Zurich American Insurance Company*,[101] the

15 U.S. District Court for the District of Utah found that this exclusion applied because all of the

16 property damage at issue was "for the removal and replacement of the" insured's "defective

17 lumber," which was the insured's "work."[102]  That lumber was itself physically extracted from

18

---

19 [96] *Id.*

20 [97] *See* ECF No. 14-6 at 92.

    [98] *Id.*

21 [99] *See* ECF No. 14 at 17.

22 [100] ECF No. 37 at 6.

23 [101] *Big-D Constr. Midwest, LLC v. Zurich Am. Ins. Co.*, 2018 WL 3849923 (D. Utah Aug. 13, 2018).

    [102] *Id.* at *7.

inside of the thing of which it was a part—several new structures that the insured, a contractor, was hired to build.[103]  And in *Arizona Civil Constructors, Inc. v. Colony Insurance Company*,[104] I found that several exclusions warranted dismissal of an insured's breach-of-contract claim under FRCP 12(b)(6) because the insured hadn't sufficiently alleged that its work had caused "independent, irreparable" damage to work or property other than its own.[105]  So both *Big-D* and *Arizona Civil Constructors* are materially distinguishable because, unlike the work in those cases, Hi-Tech's aggregate caused irreparable, unextractable damage to Pavestone's pavers.

More analogous is the Middle District of Pennsylvania's *Keystone Filler & Manufacturing Co., Inc. v. American Mining Insurance Co.*[106]  Keystone (the insured) sold "a carbon-based product made from finely-ground coal" called "Mineral Black 123" to a third party.[107]  That third party used Mineral Black 123 "as a component of a material called plastisol" that it manufactured.[108]  But some of the Mineral Black 123 was defective and rendered "2,105 gallons of plastisol . . . unusable,"[109] causing damages to the third party and several of its customers.[110]  Keystone's insurer argued that the recall or "sistership" exclusion applied, but the court rejected that argument.[111]  Even though the Mineral Black 123 was part of the "useless"

---

[103] *Id.  Big-D* is also distinguishable because the entire construction project, of which the lumber was a part, was also Big-D's work, not the work or product of some third party.

[104] *Arizona Civ. Constructors, Inc. v. Colony Ins. Co.*, 481 F. Supp. 3d 1141 (D. Nev. 2020).

[105] *Id.* at 1150.

[106] *Keystone Filler & Mfg. Co. v. Am. Mining Ins. Co.*, 179 F. Supp. 2d 432 (M.D. Pa. 2002), *aff'd*, 55 F. App'x 600 (3d Cir. 2002).

[107] *Id.* at 436.

[108] *Id.*

[109] *Id.* at 437.

[110] *Id.* at 436.

[111] *Id.* at 439.

plastisol, it reasoned, the damage claims had "nothing to do with the withdrawal from the market or from use *of Mineral Black 123*," so the exclusion didn't apply.[112]

Like the defective Mineral Black 123 rendered useless the plastisol in *Keystone*, Hi-Tech's faulty aggregate wrecked the pavers, but it was the pavers—not the aggregate independently—that got withdrawn from the market or from use. So Ohio hasn't demonstrated that is entitled to a no-coverage ruling based on the "sistership" exclusion.[113]

> ### 2. To the extent that any damages are for costs that Pavestone incurred because of the loss of use, disposal, or removal of unused aggregate, the "sistership" exclusion does apply.

One small carve-out from my conclusion that the "sistership" exclusion doesn't bar coverage here may exist. There are statements in briefs and the state-court judgment[114] suggesting that some of the damages awarded are attributable to loss of use, removal, or disposal of Hi-Tech's defective aggregate that Pavestone bought but had not yet incorporated into pavers. To the extent there are such damages, they would squarely fall within the "sistership" exclusion and there would be no coverage for them under either policy.[115] But the parties stipulated to a damages amount, and the state-court judgment doesn't include a breakdown of the sources of

---

[112] *Id.* (emphasis added).

[113] While Ohio highlights that CGL policies aren't meant to provide coverage "for defective and/or faulty workmanship or products," ECF No. 38 at 5, such policies do "generally protect[] the insured when his work damages someone else's property," like Hi-Tech's aggregate did to Pavestone's pavers here. *See Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 226 (5th Cir. 2009).

[114] *See, e.g.*, ECF No. 14-7 at 16 (state-court judgment, in which the court noted that "the remaining Hi-Tech aggregate that Pavestone had not yet used had to be disposed of" and this, among other things, "caused Pavestone to incur damages").

[115] ECF No. 14-4 at 86; ECF No. 14-6 at 30.

damages that contributed to that final number.[116]  So if Ohio is able to demonstrate that some portion of Pavestone's damage award is solely for that raw aggregate, the "sistership" exclusion would preclude coverage for that portion of the award.

### D.   Unresolved factual questions preclude summary judgment based on the "manufacturer's errors or omissions" exclusion.

The umbrella policy "does not apply to: 'Damages' arising out of any 'manufacturer's error or omission.'"[117]  Ohio argues that "Pavestone's damages appear to arise specifically out of Hi-Tech's errors or omissions as the manufacturer of the sand/aggregate, and the judgment confirms the same."[118]  Because "Hi-Tech erred in preparing and selling the aggregate," Ohio argues, "there is no insurance coverage for that damage under the Umbrella Policy."[119]  Hi-Tech counters that it "had no reason to know that the sand was not suitable for pavers nor did it have any reason to test its product for sodium," highlighting language from the state-court order indicating that Hi-Tech was unaware of the problem and testing for it wasn't an industry standard.[120]  Pavestone likewise contends that the state-court judge didn't find that Hi-Tech erred, and Hi-Tech "had no reason to test or to know that the particular sand at issue was defective."[121]

---

[116] ECF No. 14-7 at 16 (noting that "[t]he amount of damages so incurred by Pavestone have been stipulated by the parties and are therefore found to be in the sum of $2,144,357.84").

[117] ECF No. 14-6 at 78.

[118] ECF No. 14 at 20.

[119] *Id.*

[120] ECF No. 33 at 16.

[121] ECF No. 32 at 15.  Pavestone also argues that Hi-Tech isn't a manufacturer within the meaning of a dictionary definition of that term, but because I find that Ohio isn't entitled to summary judgment on the applicability of this exclusion, I need not—and thus do not—reach that alternative argument.  *See* ECF No. 32 at 15.

Ohio's position that is entitled to early summary judgment on this exclusion is fatally undermined by its own definition of a critical term. The exclusion defines "Manufacturer's error or omission" as an insured's "*negligent* design, installation, or manufacture of 'your product.'"[122] But a showing of negligence on Hi-Tech's part wasn't a component of the state-court judgment that Hi-Tech breached an implied warranty.[123] Ohio has neither argued nor demonstrated that the state-court judge found that Hi-Tech was negligent.[124] And certain party stipulations made during the state-court litigation tend to support Hi-Tech's assertion that it exercised reasonable care in the mining and extraction of its aggregate.[125]

Whether Hi-Tech was negligent in preparing the aggregate that it sold to Pavestone is thus a material issue of fact that can't be resolved on this pre-discovery summary-judgment motion based solely on the policies themselves and a state-court order that didn't explicitly find Hi-Tech negligent. So I deny Ohio's motion to the extent that it seeks a no-coverage finding based on this "manufacturer's errors or omissions" exclusion.[126]

---

[122] ECF No. 14-6 at 78 (emphasis added).

[123] *See* NRS §§ 104.2314, 104.2315; *Nev. Cont. Servs., Inc. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003).

[124] *See* ECF No. 37 at 6 ("Ohio takes no position as to whether Hi-Tech was or was not negligent . . . . Negligence is irrelevant.").

[125] *See, e.g.*, ECF No. 14-7 at 11 (noting that Hi-Tech and Pavestone stipulated that, "in the paver manufacturing industry, it is not industry standard to test for excessively high levels of sodium" and that "any industry standard inspection or test of the aggregate would not have revealed excessively high levels of sodium").

[126] I also question whether some or all of the damages to Pavestone's pavers would fall within this exclusion's definition of damages. For the purposes of this exclusion, damages "[m]eans economic loss sustained by your customer because of their loss of use of their tangible property *which has not been physically injured or destroyed* . . . ." ECF No. 14-6 at 78. The parties don't address whether the damage to the pavers—either solely from inclusion of the defective aggregate, which rendered even uninstalled pavers useless, or from the subsequent efflorescence that the defective aggregate caused in the installed pavers—amounts to physical injury to, or destruction of, the pavers within the meaning of this exclusion. But because none of the parties

### E.    The CGL policy doesn't cover the attorney's fees award, but the umbrella policy does.

As its final summary-judgment pitch, Ohio argues that the policies don't cover the attorney's fees awarded to Pavestone in the state-court litigation.[127]  It notes that while "Ohio is responsible for indemnifying for 'all court costs taxed against the insured in the "suit" it defended,'" the "CGL Policies make it clear that 'these payments do not include attorney's fees or attorney's expenses taxed against the insured.'"[128]  Hi-Tech relies on a single district-court decision from the Southern District of Florida for the proposition that attorney's fees are covered because they stem from the "property damages" that the policies cover.[129]  Ohio counters that the case Hi-Tech cites is inapposite because it deals with a state-specific law, and "attorney's fees are not recoverable as damages under Nevada law."[130]

The case Hi-Tech relies on, *Assurance Co. of America v. Lucas Waterproofing Co.*,[131] is materially distinguishable and isn't persuasive here.  The *Assurance* court did find that "attorneys' fees and costs that an insured becomes obligated to pay" and that "are attributable to an insurer's duty to defend the insured against claims" for which there would be coverage "constitute damages because of 'property damage' within the meaning of a CGL policy."[132]  But

---

briefed this issue and I am denying Ohio's early summary-judgment motion as to this exclusion on other grounds, I need not resolve those questions at this juncture.

[127] ECF No. 14 at 21.

[128] *Id.*

[129] ECF No. 33 at 16–18.  Pavestone didn't address this issue in its summary-judgment response. *See* ECF No. 32.

[130] ECF No. 38 at 13.

[131] *Assurance Co. of Am. v. Lucas Waterproofing Co., Inc.*, 581 F. Supp. 2d 1201 (S.D. Fla. 2008).

[132] *Id.* at 1214–15.

the court's policy-based holding simply can't be squared with the fact that attorney's fees appear to be categorized as a type of litigation cost under Hi-Tech's CGL policy, and that policy expressly disclaims coverage for "attorneys' fees or attorneys' expenses taxed against the insured."[133]  To hold that attorney's fees awarded to Pavestone in the state-court litigation are "damages" within the meaning of the policy would render that language meaningless.  So I find that the CGL policy doesn't provide coverage for Pavestone's attorney's fees award against Hi-Tech.

But that disclaimer language doesn't appear in the umbrella policy, which also contains the provision stating that it covers "all costs taxed against the 'insured' in any 'claim' or suit we defend."[134]  And the inclusion of that "all costs" language without the disclaimer suggests that the umbrella policy does cover attorney's fees awarded against the insured as a type of cost.  To find otherwise could require interpreting two policies issued at the same time, by the same insurer, and to the same insured inconsistently, in two different ways, and concluding that attorney's fees are a type of cost (albeit a cost for which there isn't coverage) in one but not the other.[135]

Ohio briefly acknowledges that the umbrella policy lacks the disclaimer but points out that it also doesn't contain an "affirmative grant of coverage to indemnify the insured for an

---

[133] ECF No. 14-4 at 87.  Attorney's fees generally aren't considered "damages" in Utah, either. *See, e.g., Neff v. Neff*, 247 P.3d 380, 400 (Utah 2011).

[134] ECF No. 14-6 at 29.

[135] *Compare* ECF No. 14-4 at 87 (establishing that, in suits in which it defends its insureds, Ohio will pay "[a]ll court costs taxed against the insured in the 'suit'" but that these payments "do not include attorneys' fees or other attorneys' expenses taxed against the insured") *with* ECF No. 14-6 at 29 (establishing that Ohio will pay "all costs taxed against the 'insured' in any 'claim' or 'suit' [it] defend[s]").

award of attorney's fees against it."[136]  But that doesn't establish that attorney's fees aren't covered as a type of cost.  Ohio also contends that while some courts have found attorney's fees to be covered costs under insurance policies, such a finding isn't merited here because "the Policy expressly excludes attorney's fees awards."[137]  But that is true for the CGL policy only, and the fact that they aren't covered under that policy doesn't mean that the policies don't consider them to be a type of cost.  On the contrary, the express disclaimer of attorney's fees in the CGL policy provision dedicated to cost coverage suggests the opposite is true.  The case Ohio cites on this point, *American Fire and Casualty Co. v. Unforgettable Coatings, Inc.*,[138] doesn't address this issue either.  The *Unforgettable* court just found that the plaintiff couldn't state a breach-of-contract claim based on the insurer's failure to cover an attorney's fees award because the policy in that case contained a disclaimer similar to the one in Hi-Tech's CGL policy.

Attorney's fees are often considered a type of litigation cost in different states and statutes.[139]  Indeed, Black's Law Dictionary defines "costs," in pertinent part, as "[t]he expenses of litigation, prosecution, or other legal transaction" and notes that "[s]ome but not all states allow parties to claim attorney's fees as a litigation cost."[140]  In similar scenarios, courts have

---

[136] ECF No. 14 at 22 n.15.

[137] *Id.* at 22.

[138] *Am. Fire & Cas. Co. v. Unforgettable Coatings, Inc.*, 2022 WL 3143991, at *3 (D. Nev. Aug. 5, 2022).

[139] *See, e.g., Cutler-Orosi Unified Sch. Dist. v. Tulare Cnty. Sch. etc. Auth.*, 31 Cal. App. 4th 617, 632 (1994) (discussing "statutory characterization of attorney fees as costs" in the Voting Rights Act).

[140] *Costs*, Black's Law Dictionary (12th ed. 2024).

found that attorney's fees fell within policy provisions requiring the insurer to pay the costs taxed against the insured in a suit it defends—like the one in the umbrella policy here.[141]

In sum, it is at best ambiguous whether the taxed-costs provision in the umbrella policy covers attorney's fees awarded against Hi-Tech in a suit Ohio defends.  The provision must therefore be construed against Ohio and in favor of coverage.[142]  So I find that the attorney's fees award would be covered by the umbrella policy should the CGL policy be exhausted.[143]

### F.    Hi-Tech's motion for leave to supplement its summary-judgment response is denied.

Hi-Tech recently filed a motion seeking leave to supplement its summary-judgment response with "important evidence learned during discovery"[144] that "should compel this Honorable Court to deny" Ohio's motion.[145]  Hi-Tech contends that newly discovered facts "create genuine issues . . . as to the applicability of the Policy definitions and Policy Exclusions" that Ohio relies on in disclaiming coverage.[146]  But I have denied the bulk of Ohio's motion, and I don't find that any facts Hi-Tech has learned would impact my ruling in favor of Ohio as to whether the CGL policy covers the attorney's fees award because it is based on interpretation of unambiguous language in that policy itself, not extrinsic evidence.  Hi-Tech will also have the

---

[141] *See Prichard v. Liberty Mut. Ins. Co.*, 84 Cal. App. 4th 890, 912 (2000), *as modified on denial of reh'g* (Dec. 6, 2000); *Ins. Co. of N. Am. v. Nat'l Am. Ins. Co.*, 37 Cal. App. 4th 195, 207 (1995).

[142] *Utah Farm*, 980 P.2d at 687 (citing *Alf*, 850 P.2d at 1274; *Nielsen*, 848 P.2d at 666).

[143] Ohio notes that the "defense obligations under the umbrella policy do not kick in until after exhaustion of the CGL policy, which has not occurred," ECF No. 14 at 22 n.15, something that neither Hi-Tech nor Pavestone disputes.

[144] ECF No. 65.

[145] *Id.* at 3.

[146] *Id.* at 6.

1  opportunity to address this new evidence in its post-discovery dispositive briefing, should it

2  choose to do so.  So I deny the motion.

3  **III.    Ohio's Motion to Dismiss**

4       Ohio separately moves to dismiss all three of Hi-Tech's counterclaims under FRCP

5  12(b)(6).  District courts employ a two-step approach when evaluating a complaint's sufficiency

6  on a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual

7  allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

8  of truth.[147]  Mere recitals of a claim's elements, supported by only conclusory statements, are

9  insufficient.[148]  The court must then consider whether the well-pled factual allegations state a

10 plausible claim for relief.[149]  A claim is facially plausible when the complaint alleges facts that

11 allow the court to draw a reasonable inference that the defendant is liable for the alleged

12 misconduct.[150]

13       **A.    Hi-Tech's breach-of-contract claim survives dismissal for the same reasons
             that summary judgment was not available on Ohio's declaratory relief**
14           **claims.**

15       Ohio argues that Hi-Tech's breach-of-contract claim should be dismissed for the same

16 reasons it deserves an early summary-judgment order on its counterclaims—Hi-Tech doesn't

17 have coverage under the policies because several exclusions apply and the policies don't cover

18 attorney's fees awards.[151]  But, as discussed, Ohio's summary-judgment motion didn't resolve

19 the coverage issues in its favor.  Indeed, it appears that at least a portion of the damages award

20

---

21 [147] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

   [148] *Id.*

22 [149] *Id.* at 679.

   [150] *Id.*

23 [151] ECF No. 44 at 19.

will be covered, and possibly the attorney's fees award, too.  So Hi-Tech's breach-of-contract claim also survives.

**B.      Hi-Tech's bad-faith and statutory claims are dismissed with leave to amend.**

**1.      *Hi-Tech doesn't include sufficient factual allegations in support of its bad-faith and Nevada Revised Statutes (NRS) 686A.310 claims.***

Hi-Tech's second and third counterclaims are for breach of the covenant of good faith and fair dealing and violations of Nevada's Unfair Claims Practices Act (NRS 686A.310), respectively.[152]  Ohio contends that these two claims "are unsupported by any factual allegations that would give rise to a plausible claim for relief" because Hi-Tech "offers no explanation . . . as to which of Ohio's actions were supposedly 'unreasonable'" or "why said actions were 'unreasonable.'"[153]

Indeed, these thin claims are almost exclusively comprised of legal conclusions.  Hi-Tech alleges, for example, that if Ohio performed under the contract it "did so in a manner that was unfaithful to the purpose of the policy[,] . . . which denied the reasonable expectation of Hi-Tech for benefits," Ohio's refusal to provide coverage "was made in bad faith," Ohio's actions "were unreasonable and were done with knowledge that there was no reasonable basis for their actions," Ohio "violated the trust between an insured and an insurer" and the special relationship between the parties upon which Hi-Tech "reasonably relied," and Ohio's actions "were egregious, malicious, fraudulent[,] or oppressive."[154]  This is pretty much all Hi-Tech offers in support of these claims outside of a few general statements that the reservation-of-rights letters

---

[152] ECF No. 41 at 12–13.

[153] ECF No. 44 at 21–22.

[154] ECF No. 41 at ¶¶ 32–47.

that Ohio sent Hi-Tech were vague and erroneous.[155]  These conclusory assertions aren't enough to state plausible causes of action, as Hi-Tech must instead state facts from which these legal conclusions can be inferred.  So I dismiss Hi-Tech's bad-faith and NRS 686A.310 claims under FRCP 12(b)(6) for failure to state a claim.

### 2. Hi-Tech has demonstrated that amendment may not be futile.

Hi-Tech contends that any dismissal of its claims should be without prejudice and with leave to amend.  Ohio argues that the dismissal should be final.[156]  According to Ohio, amendment "would be futile in this case because the Policies and Awards speak for themselves" and "are clear as to what is required for coverage and what is excluded."[157]  Even if there is coverage, Ohio argues, "it cannot be said that coverage was so clear that it was not fairly debatable."[158]

If a court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that deficiencies of the complaint cannot be cured by amendment.[159]  Ohio's argument that amendment would be futile because there is no coverage is unavailing because, as explained *supra*, it seems that at least a portion (and likely a substantial one) of the

---

[155] *Id.* at ¶¶ 14–15, 18–19, 21–22.

[156] ECF No. 44 at 23.

[157] *Id.*

[158] *Id.* at 24.

[159] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

damages award will be covered.  And whether coverage was debatable[160] or Ohio's conduct was ultimately reasonable[161] are factual questions that cannot be resolved on a motion to dismiss.

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing."[162]  Implied-covenant claims may be brought to censure a broad swath of "grievous and perfidious conduct," including an insurer's unreasonable or bad-faith denial of a claim, unreasonable delay in settling a claim, and failure to inform an insured of a settlement offer.[163] And NRS 686A.310(1) similarly prohibits insurers from, among other things, "[f]ailing to effectuate prompt, fair[,] and equitable settlements of claims in which liability of the insurer has become reasonably clear," and "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies."  Hi-Tech has shown that it can meet these elements with factual allegations.  It identifies, for example, the

---

[160] Ohio cites only Utah cases for the proposition that "when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be said to have breached the implied covenant of good faith."  ECF No. 44 at 21 (citing *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996)).

[161] Both parties argue about the reasonableness of Ohio's reservation-of-rights letters and whether they were confusing or otherwise improper.  *See* ECF No. 46 at 12–17; ECF No. 47 at 8–11.  Ohio argues—and Hi-Tech doesn't dispute—that the court can consider these letters on a motion to dismiss because they are integral to Hi-Tech's complaint and their authenticity isn't in dispute.  ECF No. 44 at 15.  I have considered these letters because Hi-Tech's complaint references them and its bad-faith and NRS 686A.310 claims appear to be based, at least in part, on them.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (when documents form the basis of claims or are referenced in the complaint they can be considered when deciding a motion to dismiss under the incorporation-by-reference doctrine).  But engaging in an exhaustive reasonableness analysis on a motion to dismiss would be premature because "[w]hether a defendant's conduct was 'reasonable' under a given set of facts is generally an issue for the jury to decide."  *See Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001).  At minimum, such an analysis would need to be undertaken on post-discovery summary-judgment briefing.

[162] *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (internal quotation marks and citations omitted).

[163] *Miller*, 212 P.3d at 310 ("This court has previously held that a bad-faith action applies to more than just an insurer's denial or delay in paying a claim.").

portions of Ohio's reservation-of-rights letters that were purportedly vague and confusing and explains why, at least in Hi-Tech's view, they were so.[164]  It also suggests that Ohio failed to adequately investigate and perform coverage analysis over the years between two of the reservation-of-rights letters, which it argues "reeks of bad faith."[165]  There ultimately might not be evidence to support all of Hi-Tech's characterizations, and its briefing can't save its deficiently pled counterclaims from dismissal.  But that briefing does suggest that, if given an opportunity amend, Hi-Tech may be able to flesh out these claims enough to survive a future motion to dismiss.

### 3.    *Ohio's abuse-of-process arguments are unavailing.*

Nor do I find, as Ohio urges, that Hi-Tech's bad-faith and statutory counterclaims should be precluded "as nothing more than an abuse of the legal process to save its improper discovery requests."[166]  According to Ohio, Hi-Tech "chose to assert these counterclaims . . . to artificially validate its voluminous, irrelevant, disproportional, overbroad, unduly burdensome, harassing, and oppressive discovery requests."[167]  In support of this assertion, Ohio highlights that Hi-Tech had all the information it needed for these counterclaims when it filed its first answer and only sought to amend it and include them after Ohio objected to Hi-Tech's discovery requests.[168]  And it argues that the court should not reward Hi-Tech "for abusing the legal process for the

---

[164] ECF No. 46 at 12–17.

[165] *Id.* at 13.

[166] *Id.*

[167] *Id.*

[168] *Id.* at 19–20.

1  sole, and ulterior purpose of extorting inappropriate discovery, which is the only plausible

2  explanation for what it is doing and the timing of the same."[169]

3       But Ohio doesn't cite any authority for the proposition that amending an answer to

4  include counterclaims after being given leave to do so amounts to an abuse of process, especially

5  when similar arguments were made in opposition to the motion to amend and rejected by the

6  court.[170]  Nor does Ohio cite any authority establishing that, if this is an abuse of process, such

7  an abuse warrants the outright dismissal of these claims rather than some other, less-drastic

8  sanction.  Hi-Tech properly sought leave to amend and merely added two counterclaims that are

9  commonly asserted in disputes over insurance coverage.  Magistrate Judge Koppe ruled that it

10 was entitled to do so[171] and, to the extent that Ohio disagrees with that ruling, the time to seek

11 review  passed long ago.[172]

12       So I dismiss Hi-Tech's bad-faith and NRS 686A.310 claims with leave to amend to add

13 factual allegations to support them and identify the specific subsections of NRS 686A.310 that

14 Hi-Tech believes Ohio has violated.[173]  But I dismiss Hi-Tech's statutory claims under Utah

15

16 _____

[169] *Id.* at 20.

17 [170] *See* ECF No. 40 (rejecting Ohio's arguments that Hi-Tech shouldn't be allowed to amend its answer because the addition of counterclaims would amount to an abuse of process).

18 [171] *Id.*

19 [172] *See* L.R. IB 3-1(a).

20 [173] Ohio argues that Hi-Tech's statutory claims also fail because Hi-Tech hasn't provided "the specific enumerated violation(s) it contends Ohio committed."  ECF No. 44 at 22.  NRS
21 686A.310 describes a number of unlawful practices, but the fact that Hi-Tech didn't identify the specific subsections this claim is brought under isn't necessarily fatal.  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional
22 source of the claim raised in order to survive a motion to dismiss.").  Regardless, amendment gives Hi-Tech the opportunity to identify the specific NRS 686A.310 subsections that it believes
23 Ohio violated and provide additional factual allegations to sufficiently state claims under those subsections.

Code Sections 31A without leave to amend because Utah law does not apply to the unfair-claim-practices issue.  Hi-Tech's prayers for punitive damages also fall with these claims,[174] but they may be salvaged if Hi-Tech is able to plead sufficient facts to support them in its amended counterclaim.

### C.    Hi-Tech's motion for leave to reopen briefing on Ohio's motion to dismiss is denied.

Hi-Tech recently filed a motion for leave to reopen the briefing on Ohio's motion to dismiss so Hi-Tech can file a "supplemental opposition" based on "facts learned during discovery."[175]  It argues that "newly discovered facts should compel a finding of bad faith"[176] and goes on describe various depositions it took, documentary discovery it obtained, and the overall discovery process and timeline.[177]  But at the motion-to-dismiss stage it is the adequacy of the allegations within the four corners of the pleadings that is at issue, and I couldn't consider any of the evidence that Hi-Tech would like to use to supplement its response to Ohio's motion.  Regardless, I have granted Hi-Tech leave to amend its bad-faith and NRS 686A.310 claims, so it will have the opportunity to (and must) supplement those claims with additional factual allegations.  I therefore deny Hi-Tech's motion to supplement its response to Ohio's motion to dismiss.

---

[174] *See* ECF No. 44 at 23.

[175] ECF No. 64 at 1.

[176] *Id.* at 2.

[177] *Id.* at 2–13.

**Conclusion**

IT IS THEREFORE ORDERED that Ohio's motion for summary judgment **[ECF No. 14] is GRANTED in part**; I find that the CGL policy doesn't provide coverage for Pavestone's attorney's fees award against Hi-Tech; and any portion of Pavestone's state-court damages award attributable to loss of use, removal, or disposal of Hi-Tech's raw aggregate is barred by the sistership exclusion. **But it is otherwise DENIED**.

IT IS FURTHER ORDERED that Ohio's motion to dismiss Hi-Tech's counterclaims **[ECF No. 44] is GRANTED in part and DENIED in part**. Hi-Tech's second and third counterclaims for bad faith and unfair claim practices **are DISMISSED**. But **I grant Hi-Tech leave to amend only its bad-faith and NRS 686A.310 claims by September 6, 2024**; its Utah statutory claims are dismissed without leave to amend.

IT IS FURTHER ORDERED that Hi-Tech's motions to reopen the briefing on Ohio's motions to dismiss and for summary judgment **[ECF Nos. 64, 65] are DENIED**.

In light of the nature of this order, IT IS FURTHER ORDERED that **the September 11, 2024, deadline to file dispositive motions [ECF No. 49] is extended to October 26, 2024.** Should these rulings necessitate reopening or extension of any other deadlines, the parties have until September 6, 2024, to file a stipulation or motion seeking that relief.

_____
U.S. District Judge Jennifer A. Dorsey
August 26, 2024