**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Ohio Security Insurance Company, et al., | Case No.: 2:23-cv-01094-JAD-NJK |
| Plaintiffs/Counterdefendants | **Order Resolving All Pending Motions and Closing Case** |
| v. | |
| Hi-Tech Aggregate, LLC, | [ECF Nos. 66, 72, 82, 85, 86, 90, 91, 93] |
| Defendant/Counterclaimant | |

This insurance dispute began as a declaratory-judgment action by Ohio Security Insurance Company seeking a determination that it had no insurance-coverage obligations arising from monetary judgments that former defendant Pavestone, LLC, received against co-defendant Hi-Tech Aggregate, LLC, in state court. Hi-Tech responded with counterclaims against Ohio for breach of contract, bad faith, and unfair claims practices. In August 2024, I held that Ohio wasn't entitled to a no-coverage judgment on any of the policy exclusions it raised. Ohio has since satisfied Pavestone's underlying judgment, and all of Ohio's claims against Pavestone have been dismissed. Ohio now moves to voluntarily dismiss its declaratory-judgment claims against Hi-Tech, and I grant that motion because the controversy regarding Ohio's coverage obligations ceased to exist when Ohio paid out Hi-Tech's claim. So all that substantively remains in this case are Hi-Tech's counterclaims, which were amended with leave of court after discovery had closed.

The parties raise myriad disputes over the scope of discovery and the validity of Hi-Tech's counterclaims. Hi-Tech moves for case-dispositive sanctions for Ohio's alleged failure to supplement its responses to discovery requests. Because Ohio did supplement its responses and Hi-Tech hasn't sufficiently shown that those supplements were untimely, I deny that motion.

Ohio seeks dismissal of one amended counterclaim (breach of fiduciary duty) and summary judgment on the rest. I grant both motions because Nevada courts don't recognize fiduciary-breach claims in the insurance context, Hi-Tech hasn't shown that Ohio breached any provision of the applicable insurance contract, and Ohio has met its summary-judgment burden to show that Hi-Tech can provide no evidence of damages it sustained because of Ohio's alleged bad-faith conduct or unfair-claims practices. And because these decisions leave no active claims remaining in this litigation, I deny as moot Ohio's objection to the magistrate judge's discovery order, its request to realign the parties, and its motion for an extension of time to file its answer, and I close this case.

**Discussion**

**A.    Hi-Tech hasn't shown that Ohio violated its discovery obligations, so its sanctions motion is denied.**

Two weeks after discovery closed in this case, Hi-Tech filed a motion for case-dispositive sanctions against Ohio under Federal Rule of Civil Procedure (FRCP) 37(c).[1] Hi-Tech focuses on two categories of discovery that it claims Ohio failed to timely disclose in violation of FRCP 26(a) and (e). It faults Ohio for failing to initially disclose, and then failing to supplement discovery responses to include, the name and last known address of claims adjuster Jennifer Hormel.[2] And it accuses Ohio of failing to timely supplement its discovery responses to produce manuals and training materials available to claims adjusters.[3]

---

[1] ECF No. 66 (filed August 26, 2024); *see also* ECF No. 49 (extending discovery deadline to August 12, 2024); ECF No. 77 at 3 (Hi-Tech's reply in support of its sanctions motion, clarifying that its motion "was brought [under] Rule 37(c)").

[2] ECF No. 66 at 13–14.

[3] *Id.* at 4–13.

2

### 1.    *Relevant discovery history*

#### a.    *Ohio objects to Hi-Tech's discovery requests that it deems outside the scope of its narrow, declaratory-relief action.*

Ohio initiated this lawsuit as a declaratory-judgment action seeking a ruling that it was not contractually obligated to indemnify Hi-Tech for the $2.6 million judgment levied against it in the underlying state-court action between Pavestone and Hi-Tech.[4]  Hi-Tech's initial answer, filed on September 15, 2023, did not assert any counterclaims.[5]  Despite the limited scope of the case at that point, Hi-Tech served Ohio with broad discovery requests seeking all "claims manuals, memoranda, directives, letters, investigation matrix documents[,] and other forms of written or computerized communication" relating to "the handling of claims generally or the handling of claims like this claim at issue," and "all training manuals, online related publications, bulletins, instruction memos from management, timelines, and requirements for investigation" provided to "any adjuster or other employee . . . who worked on the claim at issue and/or participated in the decision to deny coverage for the claim in any way."[6]  Hi-Tech also served Ohio with interrogatory requests asking it to identify "all manuals . . . used (from 2018 to the present) for reservations of rights," "all criteria, guidelines, practices, procedures, and[] policies . . . [that] were utilized in any manner whatsoever in handling, reviewing, []or evaluating" Hi-Tech's claim, and all employees involved in groups "concerning the decision" on Hi-Tech's claim.[7]  Hi-Tech further asked Ohio to identify "all employees and agents . . . who handled,

---

[4] ECF No. 1.

[5] *See* ECF No. 9.

[6] ECF No. 66-2 (requests for production nos. 4 & 5).

[7] ECF No. 66-4 (interrogatory nos. 3, 5 & 10).

reviewed, evaluated, or recommended any action upon" Hi-Tech's claim and what experience and training those adjusters received.[8]

Ohio objected to Hi-Tech's requests for manuals and training materials in part based on relevance and disproportionality, noting that "this is a pure coverage suit with no claim handling causes of action to litigate."[9]  It further objected that the production requests seeking "all" documents related to Ohio's claims-handling practices were "overly broad and unduly burdensome."[10]  It also objected to Hi-Tech's interrogatories seeking the names of employees who worked on its claim, but notwithstanding those objections identified Connie Sanders and Steven Warnock as the people who "handled the claim that is the subject of this litigation."[11]

> b.    *Hi-Tech amends its answer to include counterclaims against Ohio for bad-faith conduct and unfair-claims practices.*

On November 1, 2023, Ohio filed a motion for summary judgment on its declaratory-judgment claims and moved to stay discovery pending a decision on that motion.[12]  That same day, Hi-Tech filed a motion to amend its answer to add counterclaims against Ohio for breaching the insurance contract and its implied covenant of good faith and fair dealing, and for violating state statutory protections against unfair claims practices.[13]  Magistrate Judge Nancy J. Koppe

---

[8] *Id.* (interrogatory nos. 11–14).

[9] ECF No. 66-2 at 8, 9; ECF No. 66-4 at 7, 9, 15.  In Hi-Tech's second round of requests for production, it sought "all manuals, educational materials, and written instructions used for instructing [Ohio's] agents, adjusters, and other personnel in drafting, formulating, and/or authoring reservations of rights and who were involved in the decision" to issue a reservation of rights letter to Hi-Tech.  ECF No. 66-3 at 11.  On November 13, 2023, Ohio objected to that request for the same reasons it objected to requests for production 4 & 5.  *Id.*

[10] ECF No. 66-2 at 8, 9; ECF No. 66-4 at 7, 9, 15.

[11] ECF No. 66-4 at 20.

[12] ECF Nos. 14, 15.

[13] ECF Nos. 16, 16-2.

granted Hi-Tech's motion to amend and denied Ohio's motion to stay discovery on January 18, 2024, and Hi-Tech filed its amended answer with those counterclaims on January 19, 2024.[14] Ohio moved to dismiss Hi-Tech's counterclaims, contending that they lacked sufficient detail to state any valid claims for relief.[15]

> c.    *Depositions of Ohio's employees reveal information that Ohio didn't disclose.*

In April 2024, Hi-Tech deposed Ohio's claims adjuster Connie Sanders.  Sanders testified that her claims manager, Jennifer Hormel, "played a role in reviewing and approving the initial reservation of rights letter that was issued to Hi-Tech."[16]  Hi-Tech claims that this was the first time it learned of Hormel's involvement in handling its claim, as she was "never identified" in Ohio's initial disclosures or interrogatory responses.[17]  Later that month, Hi-Tech sent a letter to Ohio's counsel requesting a date and time to depose Hormel.[18]  On May 9, 2024, Ohio informed Hi-Tech that Hormel no longer worked there but failed to provide her last known address.[19]  In July, counsel for the parties met and conferred about discovery, and Hi-Tech's counsel

---

[14] ECF Nos. 39, 40, 41.

[15] ECF No. 44.

[16] ECF No. 66 at 13.  Hi-Tech cites to Sanders's deposition transcript to support this statement, but the excerpts it attaches to its motion are in a random order and do not contain any statement by Sanders involving the name Jennifer Hormel.  *See* ECF No. 66-7.  But Ohio doesn't dispute that Sanders mentioned Hormel during her deposition, so I don't belabor this evidentiary insufficiency.

[17] ECF No. 66 at 13.

[18] *Id.* (citing ECF No. 66-10 at ¶ 17 (Decl. of Lisa Miller, Hi-Tech's counsel).

[19] ECF No. 66-10 at ¶ 22.  Technically, Hormel worked for Liberty Mutual Insurance Company. It appears that the two insurance companies are affiliated and that Liberty Mutual employees handled Hi-Tech's claims and "testified in this case on behalf of Ohio Security."  ECF No. 66 at 2 n.1.  To avoid confusion, I refer to both entities as "Ohio" for the purposes of this motion.

"specifically asked that Ohio provide the last known address" for Hormel.[20]  Ohio's counsel "recall[ed]" that Ohio had informally told Hi-Tech's counsel at another deposition that Hormel's last known address was in Spokane, Washington, but that "Ohio understood that she was no longer at that address"; and he nevertheless promised to provide more information in a supplemental disclosure.[21]

On June 13, 2024, Hi-Tech deposed Ohio manager Michael Greeley.[22]  Greeley testified that claims adjusters had access to claims manuals and training materials through a "huge" online database.[23]  Greeley averred that the database contained templates for writing reservation-of-rights letters, claims-handling guidelines, and state-specific information.[24]

    *d.*  *Ohio supplements its disclosures just before the discovery period closed.*

On July 3, 2024, counsel for the parties met and conferred about Ohio's discovery responses.  Less than two weeks later, Ohio agreed to supplement its responses related to training, manuals, "and other information used in drafting reservations of rights."[25]  On August 5, 2024, Ohio informed Hi-Tech that it had "run into technical issues" when attempting to supplement its responses to Hi-Tech's requests for production, and it proposed stipulating to an extension of the discovery deadline "to allow Ohio to complete its supplemental productions."[26]  Hi-Tech refused, taking the position that it was unlikely that the court would approve an

---

[20] ECF No. 71-1 at ¶ 5 (Decl. of Lee Gorlin, Ohio's counsel).

[21] *Id.* at ¶¶ 5–6.

[22] *See* ECF No. 66-9 (excerpts of Michael Greeley's deposition transcript).

[23] *Id.* at 3:16–4:10.

[24] *Id.* at 4:15–8:3.

[25] ECF No. 66-10 at ¶ 33.

[26] ECF No. 71-6 at 2.

extension and that Ohio already had sufficient time to respond.[27]  Hi-Tech also noted that Ohio had still failed to supplement its responses to provide Hormel's information, which precluded Hi-Tech from deposing her during the discovery period.  Hi-Tech informed Ohio that it "intend[ed] to seek sanctions for [Ohio's] willful noncompliance with [its] duty to supplement."[28]

Ohio's counsel responded on August 6, 2024, with Hormel's last known address.[29]  He further noted that he "thought [Ohio] provided [her] address previously," but even if he hadn't, "[Ohio] at least conveyed in conversation that she . . . was no longer at the last known address, so Hi-Tech had enough to attempt to locate her, even without this supplement."[30]  Ohio's counsel also reiterated his offer to stipulate to an extended discovery deadline "to tie up loose ends, including both supplementing Ohio's response with supplemental document production and a reasonable amount of time to locate and depose" Hormel.[31]  Hi-Tech didn't take Ohio up on its offer.[32]  On August 7, 2024, Ohio served supplemental responses containing "internal guidelines pertaining to reservation of rights letters."[33]  And Ohio formally served a supplemental interrogatory response with Hormel's address on August 13, 2024, the day after discovery closed.[34]  Hi-Tech filed its sanctions motion two weeks later.[35]

---

[27] ECF No. 71-7 at 2.

[28] *Id.*

[29] ECF No. 71-8 at 2.

[30] *Id.*

[31] *Id.* (emphasis omitted).

[32] ECF No. 71 at 5–6; ECF No. 71-1 at ¶ 10.

[33] ECF No. 66 at 13 (citing ECF No. 66-10 at ¶ 35).

[34] ECF No. 66-11.  It appears that Ohio served the responses on August 12, 2024, but mistakenly referred to them as supplements to Pavestone's requests.  *See id.* at 26–27 n. 1 & 2.  It's unclear whether the supplement was served on Hi-Tech on August 12th, August 13th, or both.

[35] ECF No. 66.

### 2. The Federal Rules of Civil Procedure outline a party's discovery obligations, establish procedures to compel withheld discovery, and authorize sanctions when parties don't comply.

FRCP 26(a) governs initial disclosures that a party must provide "without awaiting a discovery request."[36]  Under the rule, a party must disclose witness names and documents that it "may use to support its claims or defenses, unless the use would be solely for impeachment."[37]  Rule 26(b) outlines the permissible scope of discovery requests between parties, explaining that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[38]  And Rule 26(e) imposes an affirmative duty on a "party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—" to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."[39]

Parties who shirk the duty to provide initial disclosures under Rule 26(a) or to supplement discovery under Rule 26(e) may face sanctions under Rule 37(c).  "The primary sanction for that failure is to prohibit the offending party from using that information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[40]  Courts may also sanction the offending party by ordering "payment of the

---

[36] Fed. R. Civ. P. 26(a).

[37] Fed. R. Civ. P. 26(a)(1)(A)(i) & (ii).

[38] Fed. R. Civ. P. 26(b)(1).

[39] Fed. R. Civ. P. 26(e)(1)(A).

[40] Fed. R. Civ. P. 37(c)(1).

reasonable expenses, including attorney's fees, caused by the failure" and any other "appropriate sanctions."[41]   The Ninth Circuit "gives particularly wide latitude to the district court's discretion to issue sanctions under FRCP 37(c)(1) because subsection 37(c)(1) is a recognized broadening of the sanctioning power."[42]

### 3.    *Hi-Tech hasn't shown that Ohio violated discovery rules with respect to claims manager Jennifer Hormel.*

#### a.    *Ohio didn't intend to call Hormel as a witness, so it wasn't required to disclose her information under FRCP 26(a).*

Hi-Tech contends that Ohio violated FRCP 26(a) by failing to identify Jennifer Hormel, an Ohio claims manager who "played a role in reviewing and approving the initial reservation of rights letter that was issued to Hi-Tech."[43]   FRCP 26(a)(1)(A)(i) requires a party to disclose the "name and, if known, the address and telephone number of each individual likely to have discoverable information" that the party "may use to support its claims or defenses, unless the use would be solely for impeachment" without awaiting a discovery request for those items.[44] Hi-Tech does not demonstrate that Ohio intended to use Hormel as a witness in this case, so it's unclear how Ohio's failure to initially disclose her information violated Rule 26(a), which only compels the disclosure of information that a party *may use* to support its claims or defenses.[45] So a Rule 26(a) failure cannot be the basis for leveling sanctions against Ohio for its alleged delay in providing information concerning Jennifer Hormel.

---

[41] Fed. R. Civ. P. 37(c)(1)(A), (C).

[42] *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1245 (9th Cir. 2012) (internal quotations omitted).

[43] ECF No. 66 at 13, 15.

[44] Fed. R. Civ. P. 26(a)(1)(A)(i).

[45] *See R & R Sails*, 673 F.3d at 1246 (noting that a party had no affirmative obligation to disclose information not covered by Rule 26(a) absent a request from its adversary).

b.    *Hi-Tech hasn't shown that Ohio violated Rule 26(e) by failing to formally supplement its responses with Hormel's last known address.*

Hi-Tech contends that Ohio's failure to formally supplement its interrogatory responses to identify Hormel and her last known address until the day after discovery closed violated Rule 26(e).  But Hi-Tech glosses over Ohio's counsel's declaration stating that he told Hi-Tech in May 2024 that Hormel no longer worked for Ohio, her last known address was in Spokane, and he believed that she no longer lived there.   FRCP 26(e) requires formal supplementation of discovery responses only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[46]  Hi-Tech fails to address the fact that Hi-Tech knew about Hormel, her relevance to this case, and her general whereabouts far earlier than Ohio's formal disclosure.  Hi-Tech hasn't shown that Ohio had more information about Hormel's current address in its possession that it should have disclosed. So, because Ohio's information about Hormel's whereabouts was made known to Hi-Tech during the course of discovery and Hi-Tech doesn't show that those informal supplementations were untimely, I cannot conclude that Ohio violated Rule 26(e) by failing to provide the information in its possession earlier.

### 4.    *Hi-Tech also hasn't shown that Ohio violated Rule 26(e) when it supplemented its responses regarding manuals and training materials in early August.*

Hi-Tech also takes issue with Ohio's alleged failure to supplement its responses to discovery requests seeking claims-handling manuals and training materials.  It argues that Ohio "significantly delay[ed]" its supplementation, which it contends "is a failure to provide

---

[46] Fed. R. Civ. P. 26(e)(1)(A).

information within the meaning of Rule 37(c)(1)."[47]  Hi-Tech suggests that Ohio should have

produced those documents from the very beginning of this case because Ohio knew that it had

responsive documents when they were initially sought.[48]  Ohio responds it has consistently

maintained objections to Hi-Tech's requests based on its belief that the only relevant evidence to

all the claims and defenses in this action were the insurance policies, the underlying judgments,

and the three reservation-of-rights letters that Ohio sent Hi-Tech.[49]  And because Hi-Tech never

moved to compel discovery over those objections or met and conferred on this issue under Rule

26(a), Ohio contends that Hi-Tech cannot now move for sanctions.[50]

Ohio's argument that it could reasonably maintain objections to Hi-Tech's production

request based on the scope of litigation during the earliest stages of this case is persuasive.  Ohio

had responded to Hi-Tech's initial requests when the only claim in this case was Ohio's

declaratory-judgment one, and Ohio objected to them on the basis that they were irrelevant and

disproportional to the needs of a case that, at that point, could be resolved by reference to the

insurance policy only.[51]  If Hi-Tech disagreed with that assessment, it was required to seek a

---

[47] ECF No. 66 at 16 (cleaned up) (citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose")).

[48] ECF No. 77 at 4–5.

[49] ECF No. 71 at 9.

[50] *Id.*

[51] Hi-Tech occasionally appears to rely on FRCP 37(d) to justify sanctions in this case.  *See* ECF No. 66 at 15 (citing Rule 37(d)(2) for the proposition that a party refusing to respond to discovery must seek a protective order from the court); ECF No. 77 at 6–8 (same).  But Hi-Tech doesn't bring its motion under that subsection, *see* ECF No. 77 at 3 (clarifying that Hi-Tech's motion "was brought [under] Rule 37(c)"), and it doesn't apply here.  Rule 37(d) governs a party's complete failure to respond to discovery requests.  *See* Fed. R. Civ. P. 37(d)(1)(ii) (noting that a court may order sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response"); *see also Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 604 (7th Cir. 1981) (explaining that Rule 37(a) and (b) govern when "discovery responses are made but are inadequate," while Rule 37(d) governs when a party "does not

court order compelling discovery under FRCP 37(a).  The court could have then determined whether Ohio's objections were valid.  Because Hi-Tech skipped that crucial step for resolving discovery disputes and thus never obtained a court order compelling Ohio to respond to its requests, I cannot conclude that Ohio's duty to produce responsive documents or supplement those responses was triggered at the early stages of discovery.

But I am not persuaded by Ohio's argument that Hi-Tech's failure to seek an order compelling discovery dooms its entire motion.  Though Ohio may have had legitimate objections to Hi-Tech's requests when this was merely a declaratory-judgment action, the calculus obviously changed at some point after Hi-Tech filed an amended answer containing counterclaims that broadened the scope of this case.  As other district courts have noted, "Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to [discovery requests] be corrected or supplemented to reflect those changes."[52] Indeed, it appears that Ohio recognized that at least some of its objections to producing claims manuals and training materials were no longer valid when it agreed in mid-July to supplement those disclosures.[53]  So the question becomes *when would it have been reasonable to assume that*

---

answer or object" to discovery requests at all).  Here, Ohio did respond to Hi-Tech's discovery requests with objections.  Rule 37(d) thus doesn't apply.

[52] *See, e.g.*, *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1231 (N.D. Cal. 2019) (cleaned up).  Many of the cases containing this language are analyzing facts in the slightly distinct world of patent-infringement litigation.  *See id.*, *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal 2019) (quoting *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)).  But because I find no reason to conclude that the analysis of Rule 26(e)'s requirements should change based on the type of case, I find these cases persuasive here.

[53] Ohio glosses over its eventual capitulation, arguing instead that there was no need to supplement its responses until Hi-Tech's amended counterclaims were filed after discovery closed and after Hi-Tech filed its sanctions motion.  ECF No. 71 at 9.  But Ohio's own actions suggest that it was willing to produce at least some of the requested documents before then, implying that Ohio itself thought at some point prior to this sanctions motion being filed that it had no reasonable basis for maintaining its objections.

*Ohio should have understood that its initial objections were materially incorrect based on the changed scope of the parties' claims and defenses?*[54]

The first possible answer would be in January 2024, when Hi-Tech filed its counterclaims. But, as I noted in the order granting Ohio's motion to dismiss those claims, they were based on sparse factual allegations. Hi-Tech's bad-faith counterclaim was based on three letters that Ohio sent Hi-Tech that Hi-Tech contended were "based on erroneous interpretations" of the parties' insurance contract.[55] Its statutory claim merely said that Ohio's actions "would and did violate duties spelled out in NRS 686A.310 . . . and Utah Code Sections 31A governing fair claims practices."[56] That counterclaim's thin allegations make it difficult to conclude that Ohio should have understood that the scope of the case then reasonably encompassed Hi-Tech's broad request for all manuals and training materials related to claims handling. So I find that Ohio didn't violate Rule 26(e) by not supplementing its responses based on the existence of Hi-Tech's counterclaims alone.

---

[54] Hi-Tech bases its arguments on authority suggesting that courts should determine the timeliness of supplementation based on "when the information was available to the plaintiff." ECF No. 77 at 4 (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017), also citing *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (analyzing limits of duty to supplement expert disclosures). That may be the best approach when dealing with a party's failure to add or correct information that the disclosing party otherwise does not object to providing in the first place. In *Silvagni*, for example, the court was analyzing a plaintiff's obligation to supplement initial disclosures as to damages and ruled that a plaintiff must supplement to correct damages computations when the plaintiff learns information that affects the calculation. *See Silvagni*, 320 F.R.D. at 241. But that analysis is less useful under these circumstances, in which no party disputes that the information was available to Ohio from the beginning, but they do dispute when the information became relevant under Rule 26(b). So I analyze the timeliness of Ohio's disclosures based on information in the record that would tip Ohio off to the fact that its original objections to Hi-Tech's requests were no longer reasonable to maintain.

[55] ECF No. 41 at ¶¶ 13–22, 32–44.

[56] *Id.* at ¶ 45.

It appears that the next time the issue of these materials came up was at Michael Greeley's deposition in June 2024. He testified that claims adjusters had access to a "huge database" containing manuals, guidelines, and training materials. In July 2024, Ohio agreed to supplement its responses to requests involving those materials. Regardless of whether I assess Ohio's delay in supplementation from Greeley's deposition or from the parties' meet-and-confer, I cannot conclude on this record that its August 7, 2024, disclosure was so untimely that the sanctions Hi-Tech seeks are warranted. Ohio supplemented its disclosures about a month after the meet-and-confer, which appears to be the first time the parties substantively discussed Ohio's deficient disclosures in light of Hi-Tech's counterclaims. And when Ohio became concerned that technical issues might affect its ability to supplement before the close of discovery, it asked Hi-Tech to stipulate to a reasonable extension of the discovery period to do so. It was Hi-Tech who refused.

After considering the entire convoluted history of this discovery dispute, I conclude that Ohio did not so delay supplementing its disclosures to constitute a complete failure to disclose under Rule 26(e). Ohio had initially reasonable objections to requests that appeared irrelevant and disproportional to the needs of this case based on the limited scope of Ohio's declaratory-judgment action and the threadbare allegations in Hi-Tech's counterclaims. When the parties finally discussed Ohio's disclosures a month before the discovery period closed, Ohio agreed to—and did—supplement those disclosures before the close of discovery. Under these circumstances, I cannot conclude that Ohio's actions warrant case-concluding sanctions, so I deny Hi-Tech's sanctions motion.[57]

---

[57] Hi-Tech also appeals to the court's inherent authority to award sanctions. To award sanctions under this power, "the court must make an explicit finding that the sanctioned party's conduct constituted or was tantamount to bad faith," which "requires proof of bad intent or improper

14

**B.**    **Hi-Tech's breach-of-fiduciary-duty counterclaim is not a valid cause of action under Nevada law, so Ohio's motion to dismiss that claim is granted.**

Hi-Tech originally brought counterclaims against Ohio for breach of the parties' insurance contract, breach of the implied covenant of good faith and fair dealing, and violations of Nevada Revised Statute (NRS) 686A.310, the state's statutory scheme prohibiting unfair claims practices.[58]  On August 26, 2024, I granted Ohio's motion to dismiss the bad-faith and statutory claims, finding that Hi-Tech did not plead sufficient factual allegations to support them.[59]  But I granted Hi-Tech leave to amend those claims "to add factual allegations to support them and identify the specific subsections of NRS 686A.310 that Hi-Tech believes Ohio has violated," and I specified that Hi-Tech was granted leave to amend "only" those claims.[60]

Hi-Tech filed an amended counterclaim that added factual allegations to its bad-faith and statutory claims.  But it also added a claim for "breach of fiduciary duties."[61]  Ohio now moves to dismiss that claim because adding it exceeded this court's leave order and because Nevada courts do not recognize a fiduciary-breach claim in this insurance context, but rather consider an insurer's quasi-fiduciary duty to its insured as part of the implied covenant of good faith and fair dealing that it owes its insureds.[62]  Hi-Tech doesn't really dispute either point, instead asking that

---

purpose." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (cleaned up). Hi-Tech does not adequately show that any of Ohio's actions were done for a bad-faith or improper purpose for the same reasons I find that Ohio hasn't violated Rule 26(e), so I cannot award the sanctions Hi-Tech requests under the court's inherent authority.

[58] ECF No. 41 at 9–14.

[59] ECF No. 67 at 31–32.

[60] *Id.* at 35, 37.

[61] ECF No. 68 at ¶¶ 119–27.

[62] ECF No. 72.

15

the court consider the factual allegations contained in its fiduciary-breach claim as part of its bad-faith claim.[63]

Though the Nevada Supreme Court has acknowledged that the "duty owed by an insurance company to an insured is fiduciary in nature," it has stopped short of recognizing a claim for breach of fiduciary duty in this context.[64]  The Court has instead made clear that "breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing."[65]  So, because breach of fiduciary duty by an insurer is not a viable claim in this state, I grant Ohio's motion to dismiss that claim.[66]  But because Hi-Tech's bad-faith claim subsumes its non-viable fiduciary-breach claim, I grant its request to instead construe paragraphs 120–125 as factual support for its bad-faith claim.[67]

**C.    Ohio is entitled to summary judgment on Hi-Tech's counterclaims.**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[68]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[69]  If the moving party satisfies its

---

[63] ECF No. 76 at 3.  Hi-Tech also treats Ohio's motion as one to strike, citing cases from this district denying motions to strike in a similar context.  *Id.* at 2–3.  But Ohio moves to dismiss, not to strike, so those arguments aren't persuasive here.

[64] *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 602–03 (Nev. 1998).

[65] *Id.* at 603.

[66] *See also Strabala v. State Farm Fire & Cas. Ins. Co.*, 124 F. App'x 517, 518 (9th Cir. 2005) (unpublished) (upholding district court's dismissal of fiduciary-duty claim because "Nevada law does not recognize an independent claim for breach of fiduciary duty against an insurer").

[67] Because I dismiss Hi-Tech's fiduciary-breach claim on this basis, I do not consider whether Hi-Tech exceeded this court's order granting leave to amend.

[68] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[69] *Id.* at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[70] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[71]

> ### 1.   Hi-Tech has not presented evidence that Ohio breached the insurance contract, so Ohio is entitled to summary judgment on that claim.

Ohio and Hi-Tech cross-move for summary judgment on Hi-Tech's contract-breach claim.  I previously determined that Utah law applies to the parties' contract claims.[72]  Under the law of that state, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[73]  The parties agree that there was a valid contract and that Hi-Tech performed under it, so only the third and fourth elements are at issue.[74]

Hi-Tech contends that Ohio breached the policy's coverage language providing that Ohio "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies."[75]  It argues that Ohio breached that provision when it "sought to exclude coverage using language in the Policy that had multiple

---

[70] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[71] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[72] ECF No. 67 at 5–10.

[73] *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014).

[74] *See* ECF No. 86 at 6; ECF No. 92 at 5.

[75] ECF No. 86 at 7 (citing ECF No. 14-3 at 51 (the parties' insurance contract)).

meanings and was not plain and easily understandable."[76]  Hi-Tech relies primarily on my prior order denying Ohio summary judgment on its declaratory-judgment claim to show that Ohio's interpretation of the exclusions it relied on to contest coverage was unreasonable.  But Hi-Tech doesn't grapple with the key development that, after that order hit the docket, Ohio paid out Hi-Tech's claim when it satisfied Pavestone's underlying judgment against Hi-Tech, thus "pa[ying] those sums that [it is] legally obligated to pay" because of the property damage that Pavestone experienced.[77]  So it's unclear how Ohio breached that specific provision of the contract.

Hi-Tech attempts to rely on the general statement of law that "any ambiguity or uncertainty in the language of an insurance policy must be resolved in favor of coverage" to argue that, by interpreting ambiguous language in favor of non-coverage, Ohio breached the contract.[78]  But Hi-Tech doesn't dispute that Ohio didn't deny coverage based on any of its policy interpretations.  It instead ran to court for a judicial determination of the parties' conflicting interpretations, and paid out the claim when the court held that Ohio's exclusion provisions were ambiguous.  That was the proper course of action under Utah law, and Hi-Tech doesn't point to any policy language that precluded Ohio from taking it.[79]  The record reflects that, although Ohio had doubts about whether Hi-Tech's policy covered the damage to Pavestone's products, Ohio defended Hi-Tech throughout Pavestone's lawsuit under a reservation of rights, sought a no-coverage judgment once Pavestone won judgment against Hi-

---

[76] *Id.* at 8.

[77] ECF No. 14-3 at 51.

[78] ECF No. 86 at 7 (quoting *LDS Hosp. Div. of Intermountain Health Care v. Capital Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988)).

[79] *See Farmers Ins. Exchange v. Call*, 712 P.2d 231, 238 (Utah 1985) (noting that an "insurer is entitled to seek a declaratory judgment as to its rights and obligations" when determining whether to defend its insured"); *Boyle v. Nat'l Union Fire Ins. Co.*, 866 P.2d 595, 599 (Utah Ct. App. 1993) (holding that insurance company cannot seek adjudication of duty to indemnify before "there was any determination of liability on behalf of" the insureds).

Tech, and paid out the claim when the proceedings in this court didn't go its way. Hi-Tech contends that its interpretation and the delay in payment was unreasonable[80] and that Ohio defended Hi-Tech poorly, but absent policy language expressly prohibiting that conduct (of which Hi-Tech points to none), those complaints are what bad-faith and unfair-claims-practices claims are for. So, because Ohio has met its burden to show that Hi-Tech cannot prove breach, and Hi-Tech has failed to present any genuine issues of fact concerning whether Ohio breached the contract, I grant Ohio summary judgment on Hi-Tech's contractual-breach claim.[81]

**D.    Ohio has met its summary-judgment burden to show that there is no genuine dispute that Hi-Tech cannot prove damages for its tort claims.**

Ohio moves for summary judgment on Hi-Tech's bad-faith and NRS 686A.310 claims because Hi-Tech can't establish damages for either claim. It contends that Hi-Tech failed to disclose damages computations under FRCP 26(a)(1)(A)(iii), plead special damages under FRCP 9(g), or produce evidence of general damages.[82] Hi-Tech responds that the court may grant attorneys' fees in some circumstances, and the general damages it seeks need not have a

---

[80] *See* ECF No. 77 at 2–3. Hi-Tech asserts its theory that Ohio's "yearslong refusal to pay a covered claim" constitutes a breach of the contract's express terms for the first time in reply, so I need not consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief." (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003))). But even if I did, Hi-Tech fails to point to any contractual language putting a time limit on Ohio's final coverage determination, so that argument would fail.

[81] Ohio also contends that Hi-Tech lacks evidence to show that Ohio breached its duty to defend, arguing that it is undisputed that Ohio defended Hi-Tech throughout the underlying lawsuit. Hi-Tech doesn't respond to this argument and offers no evidence to create a genuine dispute over the fact of Ohio's defense. Hi-Tech does contend that Ohio's defense was inadequate, but those arguments do not suggest that Ohio's poor defense breached an express contractual term. Hi-Tech's facts allegedly showing that Ohio did the bare minimum when defending its insured may support Hi-Tech's bad-faith claim, but they do not support its contract claim.

[82] ECF No. 85 at 9–15.

number attached because that determination is for the jury.[83]  I previously concluded that Nevada law applies to Hi-Tech's bad-faith and unfair-practices claims,[84] so I evaluate these arguments under Nevada law.

### 1. Hi-Tech cannot seek attorneys' fees as damages for its tort claims.

#### a. Hi-Tech didn't plead attorneys' fees as special damages for its bad-faith claim.

In Nevada, "[w]hen a party claims it has incurred attorney fees as foreseeable damages arising from tortious conduct or a breach of contract, such fees are considered special damages" that must be pled "as special damages in the complaint" under Nevada Rules of Civil Procedure (NRCP) 9(g) and "proved by competent evidence just as any other element of damages."[85]  "The mention of attorney fees in a complaint's general prayer for relief is insufficient to meet this requirement."[86]  Both the FRCP and NRCP require that, "if an item of special damages is claimed, it must be specifically stated."[87]

Hi-Tech does not deny that it failed to plead attorneys' fees as special damages for its bad-faith cause of action.  It instead argues that, under Utah law, "recovery of attorneys' fees are specifically allowed as special damages when litigation is based on an insurance contract."[88]  Hi-Tech is correct that Utah law permits the recovery of attorneys' fees "as consequential damages of" an insurer's breach of the "implied covenant to perform its obligations in good faith."[89]  But

---

[83] ECF No. 94.

[84] ECF No. 67 at 11–12.

[85] *Sandy Valley Assocs. v. Sky Ranch Ests. Owners Ass'n*, 35 P.3d 964, 969 (Nev. 2001).

[86] *Id.*

[87] Fed. R. Civ. P. 9(g); Nev. R. Civ. P. 9(g).

[88] ECF No. 94 at 6 (citing *Pugh v. N. Am. Warranty Servs. Inc.*, 1 P.3d 570 (Utah 2000)).

[89] *Pugh*, 1 P.3d at 574.

Nevada law—not Utah law—applies to Hi-Tech's tort claims,[90] and Nevada characterizes attorneys' fees as special damages that must be specifically pled.  Because Hi-Tech has indisputably failed to do so here, it cannot seek attorneys' fees as special damages for its tort claims.

In a footnote, Hi-Tech asks that, if I find that it has not adequately pled special damages, it be permitted to once again amend its complaint to do so.[91]  Hi-Tech's request is far too late, and it not supported by any law or argument demonstrating that allowing amendment at these end stages of litigation—based on a footnoted request—would be appropriate.  Hi-Tech does not explain why, if attorneys' fees were the bulk of the damages it intended to seek, it did not plead those damages in accordance with Nevada law in its last round of amendment.  And I'm not convinced that allowing another amendment wouldn't prejudice Ohio, which has defended against two fairly distinct versions of Hi-Tech's counterclaims without Hi-Tech having pled attorneys' fees as special damages under Nevada law.  Plus, the deadline to amend pleadings has long passed, and Hi-Tech doesn't show good cause, let alone excusable neglect, to warrant extending that deadline.[92]  So I deny Hi-Tech's flimsy request for amendment.

> **b.  *Hi-Tech can't recover attorneys' fees as damages under NRS 686A.310.***

Hi-Tech alternatively contends that it can recover attorneys' fees based on Nevada's unfair-claims-practices statute, NRS 686A.310.[93]  That statute provides that "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission" of any

---

[90] ECF No. 67 at 11–12.

[91] ECF No. 94 at 8 n.17.

[92] *See* L.R. 26-3.

[93] ECF No. 94 at 7.

prohibited unfair practice.[94]  But no Nevada court has held that those damages may include attorneys' fees, and the courts in this district have consistently held that "attorney's fees are not recoverable for violations of NRS 686A.310."[95]  I am persuaded by that conclusion and similarly predict that the Nevada Supreme Court would not interpret NRS 686A.310 to encompass an award of attorneys' fees, so Hi-Tech cannot seek them as damages under that provision either.

### c.    Hi-Tech's confession-of-judgment arguments don't demonstrate that a jury could award attorneys' fees as damages.

As a final push for attorneys' fees as damages, Hi-Tech contends that, even if it didn't plead them, it should be able to recover them because the court should treat Ohio's payment of the underlying judgment as a "confession of judgment" that entitles Hi-Tech to attorneys' fees under NRS 686A.310.  It relies on an unpublished Eleventh Circuit decision interpreting a (now repealed) Florida unfair-practices law that permitted attorneys' fees "when judgment is entered against an insurer in favor of the insured," and interpreting that law to apply in certain situations when an insurer voluntarily dismisses its declaratory-relief complaint or settles with its insured.[96] I need not dig deep into the merits of this argument because Hi-Tech fails to identify any similar Nevada provision that allows for recovery of attorneys' fees under NRS 686A.310 in any

---

[94] Nev. Rev. Stat. § 686A.310(2).

[95] *See, e.g.*, *Wunderlich v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 6512613, at * 8 (D. Nev. Oct. 5, 2023) (citing *Tracey v. Am. Family Mut. Ins. Co.*, 2010 WL 5477751, at *5 (D. Nev. Dec. 30, 2010) (analyzing NRS 686A.310 and its legislative history to conclude that the law did not intend to authorize attorneys' fees as damages)).

[96] *W&J Grp. Enters., Inc. v. Houston Specialty Ins. Co.*, 684 F. App'x 867, 868–69 (11th Cir. 2017) (citing Fla. Stat. § 627.428 (2017)).

1  scenario.  So I find Hi-Tech's authority unpersuasive and reject its confession-of-judgment

2  argument as a basis to recover attorneys' fees as damages for its tort claims here.[97]

3

4  ### 2.    Hi-Tech lacks evidence of any general damages and thus also cannot seek punitive damages.

5  Ohio argues that it is entitled to summary judgment because Hi-Tech has failed to

6  provide computations of its general damages in violation of Rule 26 or any evidence to support

7  those damages.  Hi-Tech responds that it is entitled to "general damages" that it doesn't need to

8  calculate in advance of trial or propound discovery on, arguing that the jury can infer the proper

9  damages amount after hearing evidence about Ohio's allegedly unfair or bad-faith practices.  Hi-

10  Tech grossly understates its burden under Nevada law.

11  In Nevada, a plaintiff who can prove that its insurer breached the implied covenant of

12  good faith and fair dealing "is entitled to compensation for all of the natural and probable

13  consequences of the wrong."[98]  And as noted supra, if an insurer violates NRS 686A.310, it "is

14  liable to its insured for any damages sustained by the insured as a result of" its unfair practices.[99]

15  Hi-Tech offers nothing concrete to support its claim that it suffered damages stemming from

16  Ohio's allegedly unfair or bad-faith conduct.  It merely states that, "if the business suffered

17  reputational harm due to the unpaid verdict and collection efforts, this is compensable as general

18  damages."[100]

19

---

20  [97] I don't consider whether some confession-of-judgment argument or any other theory would entitle Hi-Tech to attorneys' fees postjudgment because that issue is not presently before me.  If either party wishes to seek attorneys' fees once this case has concluded, it must file an appropriate motion supported by the legal bases for that relief.

22  [98] *State, Univ., and Comm. College Sys. v. Sutton*, 103 P.3d 8, 19 (Nev. 2004).

23  [99] Nev. Rev. Stat. § 686A.310(2).

[100] ECF No. 94 at 11.

1     While that may be true, Hi-Tech overlooks the fact that this summary-judgment briefing

2  was its opportunity to show the court that it has evidence to support any such damages award.

3  Ohio has met its burden to establish that Hi-Tech lacks evidence to show it suffered any

4  compensable damages whatsoever.  So the burden shifts to Hi-Tech to show that it has *any*

5  evidence, disclosed or not, that supports its hypothetical claims for damages.  Hi-Tech frames

6  this question as one of "mathematical certainty," saying that its failure to provide a specific

7  number can be overlooked because the specifics should be left for a jury.[101]  But Hi-Tech doesn't

8  point to any evidence that a jury could look to in order to conclude that Hi-Tech did in fact suffer

9  damages as a consequence of Ohio's conduct.  And without any evidence to show that Hi-Tech

10  is entitled to compensatory damages, it cannot get punitive damages as a matter of law.[102]  So,

11  without any evidence of the consequences of the wrongs that Hi-Tech contends entitle it to an

12  award of damages, it cannot meet an essential element of its tort claims.  Ohio is thus entitled to

13  summary judgment on those claims.

14  **E.     Ohio's motion to voluntarily dismiss its claims is granted.**

15     Ohio moves under FRCP 41(a)(2) to voluntarily dismiss whatever remains of its

16  declaratory-judgment claims.  That rule provides that, except under circumstances not present

17  here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the

18  court considers proper."[103]  "A district court should grant a motion for voluntary dismissal under

19

20

21

---

[101] *Id.*

[102] *S.J. Amoroso Const. Co. v. Lazovich & Lazovich*, 810 P.2d 775, 777 (Nev. 1991) (holding that punitive damages "are precluded in the absence of compensatory damages for the claim sustaining the punitive award").

[103] Fed. R. Civ. P. 41(a)(2).

Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result."[104]

Hi-Tech does not object to dismissal, but it asks the court to institute safeguards to ensure that Ohio's voluntary dismissal does not prejudice Hi-Tech's prosecution of its counterclaims.[105] Hi-Tech asks that Ohio be required to produce documents and witnesses at Ohio's expense at trial and that the court inform the jury that Ohio initiated this suit to avoid any prejudice.[106] Because Hi-Tech's counterclaims have been adjudicated—and thus there will be no trial in this case—Hi-Tech's concerns about trial evidence and a potentially misled jury are moot, and I decline to attach any trial-related conditions to dismissal.

Hi-Tech also asks that, if I grant Ohio's voluntary-dismissal motion, I "preclude any later argument that Hi-Tech waived its entitlement to litigation costs and attorney's fees."[107]  Ohio doesn't respond to this request, instead bizarrely arguing that if the court is inclined to deny Ohio's dismissal motion or to impose conditions on dismissal, "then Hi-Tech must forever relinquish any claim that Ohio maintained litigation once it [became] moot [or] frivolous."[108] Ohio appears to be trying to preempt any postjudgment motion for attorney's fees based on NRS 18.010(2)(b), which permits an award of attorney's fees if a party's claim was brought or maintained without reasonable grounds.  But I find these arguments about postjudgment fees and costs to be premature, and the parties' thin briefing doesn't permit me to make a determination on waiver or the application of NRS 18.010 at this time.  So, for now, I grant Ohio's motion for

---

[104] *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (cleaned up).

[105] ECF No. 96.

[106] *Id.* at 2–6.

[107] *Id.* at 10.

[108] ECF No. 100 at 6.

voluntary dismissal of its claims because, at this procedural posture, no prejudice would befall Hi-Tech by doing so. And I decline to impose conditions on that dismissal that could impact briefing on any properly brought postjudgment motions.

**F.     Ohio's motions concerning its deadline to file an answer, request to realign the parties, and objections to the magistrate judge's discovery order are denied as moot.**

Ohio objects to the magistrate judge's order denying Ohio's motion to reopen discovery after Hi-Tech filed an amended counterclaim with "new" factual contentions after discovery in this case had closed.[109] It also moves to realign the parties, given that it can no longer maintain its declaratory-judgment action and Hi-Tech's counterclaims are thus the only justiciable matters left in this action.[110] And Ohio seeks leave to file its amended answer to Hi-Tech's counterclaims after the court resolved Ohio's motion to dismiss one of those claims.[111] I deny those motions as moot because Hi-Tech has not shown that this case can move forward to trial on its counterclaims, so no active claims remain.

### Conclusion

IT IS THEREFORE ORDERED that Hi-Tech's motion for sanctions **[ECF No. 66] is DENIED.**

IT IS FURTHER ORDERED that Ohio's motion to dismiss Hi-Tech's claim for breach of fiduciary duty **[ECF No. 72] is GRANTED.**

IT IS FURTHER ORDERED that Hi-Tech's motion for partial summary judgment **[ECF No. 86] is DENIED.**

---

[109] ECF No. 90.

[110] ECF No. 93.

[111] ECF No. 82.

IT IS FURTHER ORDERED that Ohio's motion for summary judgment on Hi-Tech's contract, bad-faith, and NRS 686A.310 counterclaims **[ECF No. 85] is GRANTED.  The Clerk of Court is directed to ENTER JUDGMENT for Ohio and against Hi-Tech on Hi-Tech's counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of NRS 686A.310.**

IT IS FURTHER ORDERED that Ohio's motion to voluntarily dismiss its remaining declaratory-judgment claims **[ECF No. 91] is GRANTED.  Ohio's declaratory-judgment claims are DISMISSED with prejudice.**

IT IS FURTHER ORDERED that Ohio's objection to the magistrate judge's order denying an extension of the discovery deadline **[ECF No. 90]** and Ohio's motions to extend its deadline to file an answer and to realign the parties **[ECF Nos. 82 & 93] are DENIED as moot.**

IT IS FURTHER ORDERED that, because no active claims or counterclaims remain in this lawsuit, **the Clerk of Court is directed to CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
February 14, 2025